42    377
75    101

## JONATHAN H. STEVENS *vs.* THE TOWN OF NORFOLK.

A town, by proceedings authorized by statute, took certain land of the petitioner for the purpose of enlarging a public burying-ground, and the title had become vested for burial purposes in the town. Before any use had been made of the land, the town, at the instance of the petitioner, passed a vote to purchase some other suitable lot, appointing a committee to procure such a lot, and instructing the selectmen to convey back the land taken from the petitioner. The committee purchased another lot, but it proving to be unsuitable the selectmen declined to release the other land to the petitioner, and the town, at a legal meeting soon after held, instructed the committee to proceed to occupy, lay out and enclose the land taken from the petitioner, and at a later meeting voted to rescind the vote before mentioned. The appraised value of the land had been deposited by the town with the treasurer of the county for the petitioner, according to law, but he had never taken it. Upon a petition for an injunction to restrain the authorities of the town from taking possession of the land for burial purposes, which was brought before the rescinding vote was passed, and upon which it was found that no other suitable lot could be procured and that the same necessity existed as at first for taking the land, and

that the petitioner was placed in no worse position by the action of the town with reference to procuring another lot, it was held—

1. That the town had not by its proceedings legally abandoned the land of the petitioner.

2. That there were no equitable grounds for treating the town as having made such abandonment.

3. That therefore the right of the town under the original proceedings was not impaired.

To constitute a legal abandonment there must be an actual abandonment as well as an intention to abandon. ·

The vote of the town was at the most a declaration of an intention to abandon the land of the petitioner if another suitable lot should be obtained.

BILL IN EQUITY for an injunction to restrain the authorities of the respondent town from taking possession of certain land for · burial purposes; brought to the Superior Court in Litchfield County, and tried before *Sanford, J.* The following facts were found by the court.

The selectmen of the town of Norfolk, in behalf of the town, brought a petition to the Superior Court at its September term, in the year 1872, therein averring that the town was the owner of a burying-ground in the town, known as the "Centre Burying-Ground," and that public convenience and necessity required the enlargement of it so as to embrace within its limits certain land averred to be owned by the present petitioner, and praying that proceedings might be had to take the land in pursuance of the statute in such case provided, for the enlargement of the burying-ground, the parties being unable to agree in regard thereto. A copy of the petition was left with the petitioner in service, and he appeared in answer to the same, and such proceedings were thereupon had, that at the November term of the court, in the year 1873, it was ordered and decreed that said centre burying ground be enlarged by adding thereto the piece of land, described in the decree as belonging to the petitioner, and lying westerly from and adjoining to said burying-ground, containing three acres and ninety-six rods, and that said piece of land, on payment to the petitioner or the deposit with the treasurer of Litchfield County for the use of the petitioner, of the sum of $950, should be set apart and established as an addition to and an enlargement of said centre burying-ground, said sum

to be so paid or deposited within thirty days from December 19th, 1873. The sum of $950 was, within the time fixed by the decree, deposited by the town with the county·treasurer, subject to the order of the petitioner.

The petitioner, being dissatisfied with the taking of his land by the town, used his influence with the people of the town to get them to take some other lot for a new burying ground instead of enlarging the old one, and proposed to release to the town his claim upon the money deposited, which he had not then and has not since taken, and that the town should release to him the land taken under the decree of the court; and at his instance a meeting of the town, duly warned for the purpose, was held on the second day of March, 1874, at which the following votes were passed.

"*Resolved*, That the town shall purchase a lot suitable for a burying ground in some locality convenient and sufficiently near to the centre, which shall be used for a new centre burying ground instead of the lot proposed to be taken from the land of Dr. J. H. Stevens as an addition to the old burying ground.

"*Resolved*, That the selectmen be instructed to accept the offer of Dr. J. H. Stevens to release the town from their obligation to take his land as decreed by the Superior Court and withdraw the money deposited for his use in accordance with said decree, and that they take no further steps to get possession of or to occupy said land for burial purposes.

"*Resolved*, That a committee of three be appointed and empowered, for and in behalf of the town, to purchase such suitable lot, not to exceed ten acres, for a new burial ground, and that the selectmen be instructed to pay for the same either in cash or in obligations of the town as may be agreed upon by the committee.

"*Resolved*, That E. Grove Lawrence, Frederick E. Porter and Charles M. Ryan be appointed a committee to make said purchase, and that a majority of said committee have full power to perform all or any of the duties of said committee."

These votes were passed by the town before any thing had been done under the decree towards taking possession of or

occupying the land of the petitioner, and before any thing could conveniently be done under the decree except to deposit the $950 with the county treasurer. On the 14th day of April, 1874, the petitioner executed and tendered to the selectmen a written release, duly signed and sealed by him, purporting to release the town ·from all obligations to take the land, and ordering and requesting the treasurer of the county to pay back to the town said sum of $950; which release, within a reasonable time for consultation, the selectmen refused to accept. The petitioner has in no respect been placed in a worse position than he was in before the votes were passed and the release tendered, unless by his refusal to receive the money so deposited with the county treasurer.

The committee appointed by the town at its meeting held on the 2d day of March, 1874, did, on the 30th day of March, purchase for a burial ground a piece of land in the town called the "Crissey lot," but this lot is not convenient nor suitable for the purposes of burial nor adapted thereto, and is remote from the centre burial ground, and for a considerable portion of the year is inaccessible, and is not a fitting substitute for the land which was by the decree devoted to burial purposes as an enlargement of the centre burying-ground.

At the time of the hearing before the committee appointed by the Superior Court upon the original proceeding, the committee examined the Crissey lot, and heard all the testimony which any one chose to offer in relation to its fitness for burial purposes, and its accessibility; and in view of all the facts found that propriety, public convenience and necessity required · the enlargement of the centre burying-ground by taking for that purpose the land of the petitioner. Since that hearing and the passage of the decree no change of circumstances has occurred rendering the taking of the petitioner's land less necessary, or less proper, for public convenience for burial purposes, and, notwithstanding the purchase of the Crissey lot, propriety and public necessity and convenience still · require the enlargement made by the decree.

Since the passage of the decree several of the inhabitants of the town have expended some labor in improving the land

so taken from the petitioner, and in fitting it for burial purposes.

Since the passage of the votes of the 2d day of March, 1874, the town, at a meeting duly warned and held for the purpose, on the 21st day of May, 1874, appointed, and empowered by vote then passed, a committee to superintend and lay out for occupancy the centre burying ground as thus enlarged, and to enclose it with a suitable fence, and they were proceeding to do this when restrained by the temporary injunction granted in the present case. The town, at a meeting duly warned for that purpose, and held on the 30th day of November, 1874, rescinded and annulled the resolutions passed on the 2d of March, 1874. This action of the town was after the bringing of the present suit, which was brought on the 9th day of June, 1874.

Upon these facts the court dismissed the petition, and the petitioner brought the record before this court by a motion in error.

*W. Hamersley* and *E. W. Seymour*, for the plaintiff in error.

1. The action of the Superior Court upon the petition of the town of Norfolk, and the payment of the money to the treasurer of the county, vested in the respondents an easement —a right to use the land in question for the purposes of a public burying-ground. It was in effect a dedication of the land to that particular public use, analagous to a dedication to public use at common law. The title to the land remains in the owners, subject to the easement of the town. 2 Dillon Municp. Corp., §§ 489 to 515. The town acquired no right to sell the land. Even the legislature could not authorize a sale. Id., § 497; *Warren* v. *Mayor of Lyons City*, 22 Iowa, 351. The town acquired no right to apply the land to any other public use. If used for another purpose the parties interested could enforce the trust through a court of chancery. If used for other purposes, the land might or might not revert to owners of the fee. That question is not involved in this case. All the cases which decide that land dedicated to a public use

cannot revert to the original owner deal only with the question of misuser. They do not touch the question of abandonment. *Barclay* v. *Howell's Lessee*, 6 Pet., 498; *Board of Education* v. *Edson*, 18 Ohio S. R., 221.

2. The power of a town, or other quasi public corporation, holding land for particular public uses, to abandon the land so held is well settled. A corporation having commenced proceedings for condemnation of land for public use, may recede at any time, of its own will, before the rights of owners of the land to compensation become vested. *State ex rel. McClellan* v. *Graves*, 19 Maryl., 351. And it may recede at any time after those rights become vested, with the consent of such owners. *People* v. *Brooklyn*, 1 Wend., 318; *Matter of Third Street*, 6 Cow., 571. The right of a city to accept dedication to public use, involves the right to abandon the land so dedicated, where vested rights have not accrued. *Municipality No. 3*, v. *Levee Cotton Press Co.*, 7 Louis. Ann., 270.

3. Abandonment is a question of fact. In Connecticut, non-user for a long period is proof of abandonment. *Beardsley* v. *French*, 7 Conn., 125. But length of time is only important as proving *intention*. The intention may be sufficiently proved by a single act. The vote of the town meeting is full proof of intention in this case.

4. That vote operated as a release of the easement. Title to land may be passed, in equity, by vote of town meeting. *Copp* v. *Neal*, 7 N. Hamp., 275. The vote of a town is its proper and sufficient mode of contracting and obligating itself, and towns may alienate land by vote without a deed. Ang. & A. on Corp., §§ 24, 129, 237; *Springfield* v. *Miller*, 12 Mass., 417; *Thomas* v. *Marshfield*, 10 Pick., 364. A release of an easement by ordinance is valid. *Grant* v. *City of Davenport*, 18 Iowa, 179.

5. Vested rights, capable of intervening to prevent an abandonment, can accrue only in favor of those who, acting on faith of the dedication, have done acts which put them in a position to be injured by the abandonment; such as building on a public square, or on a highway. Here it is found that

no act had been done by the respondents or by the public, giving the public, as such, any rights in the property. If the claims of the respondents in this behalf are correct, they establish this broad and impolitic proposition, that a town or association having purchased or obtained by due course of law a tract of land for a burying-ground, cannot, on finding it wet or rocky, sell it again, but must retain it and purchase another ground. Such a proposition can not, we submit, be sustained. The right of a town to abandon the land dedicated as a graveyard, so long as no interments have been made, and no steps whatever taken in pursuance of the dedication, would seem clear.

6. Land once abandoned reverts to the owner free from the incumbrance of the easement. His title at once becomes complete. The land can not again be dedicated to public use without a repetition of all steps necessary to that end. The vote of the first town meeting was conclusive proof of the intention to abandon. It was a valid release of the rights acquired by the town under the dedication. No other person had then acquired any rights. The action of the town having been accepted and acted upon by the owner of the land was binding. The action of the second town meeting had, therefore, no legal force. The question of abandonment was settled. It could not be re-opened.

Upon the whole case therefore, we claim—

1st. That the vote of March 2d, 1874, was legal.

2d. That said vote, being legal and being in consideration of propositions made by the petitioner, which he carried out, became binding on the town.

3d. That by reason of the premises, the equitable title to the land is revested in the petitioner and he is entitled to the legal title by a decree of the court, either directly decreeing the legal title to him in accordance with the statute provisions, or by ordering specific performance on the part of the respondents of the agreement.

4th. That at all events the petitioner is entitled to a decree which shall forever restrain the town from breaking the agreement of March 2d, 1874, and which shall enjoin it from taking

possession of the land in question, or making any attempt to occupy it for burial purposes.

*G. C. Woodruff* and *D. S. Calhoun*, for the respondents.

CARPENTER, J.   The town of Norfolk proceeded under the statute to take the petitioner's land for the purpose of enlarging a cemetery.   The land was duly appraised, the proper decree was passed by the Superior Court, and the money was deposited with the county treasurer for the petitioner's use. Thereupon the title vested in the town.

The petitioner desired that the town should relinquish the land so taken, and, at his instance, the votes set out in the petition were passed by the town.   The committee thereby appointed, pursuant to such authority, purchased another lot, but upon further consideration the lot so purchased was not regarded as suitable, and the selectmen declined to complete the arrangement with the petitioner.   Subsequently the vote of the town was rescinded, and the authorities were proceeding to lay out and grade the ground taken from the petitioner for burial purposes, when this petition was brought, and their proceedings stayed by the temporary injunction.   The Superior Court heard the cause, denied the prayer of the petition, and dissolved the injunction.   The cause is brought before this court by a motion in error.

The principal objection to the judgment of the court below rests upon the assumption that the town by its vote, and the proceedings under it, had abandoned the interest it had acquired in the petitioner's land, and consequently that the petitioner had a right to have that interest re-conveyed to him.   We think this assumption is not well founded.

To constitute an abandonment there must be an intention to abandon, and that intention must be accompanied by some act by which the land is actually abandoned.   The votes of the town indicate an intention, or at least a willingness, to abandon the land, but they do not necessarily show an actual abandonment.

We interpret the votes in view of all the circumstances as

importing a contingency, or proviso; that is, that they intended to abandon the land provided a suitable lot could be obtained to use in its stead. We think that was manifestly the understanding of both parties. Accordingly when it was ascertained that the other lot purchased was not suitable, the committee declined to release the land, and declined to take back the consideration, and the town rescinded its vote. There is no ground for inferring an abandonment by non-user and lapse of time. It is not found expressly that the town abandoned the land, and we think that the circumstances are not sufficient to warrant us in saying, as matter of law, that they have done so.

The facts found by the court below will not justify a decree in favor of the petitioner.

The decree of the Superior Court vested in the town the title to the land for the purpose for which it was taken. The town held the land in trust for all persons who had a right to bury therein. It is doubtful whether the town had the power to relinquish the land and thereby defeat the trust. But waiving that question, it is manifest that the equities of the case are not with the petitioner.

It was judicially determined by the Superior Court that public convenience and necessity required the taking of the petitioner's land; it is now found that there has been no change of circumstances rendering such taking less necessary or less proper, and that the same necessity still exists. It also appears that the lot which was proposed to be taken as a substitute for the petitioner's land, is not a suitable and proper lot for that purpose; and it is expressly found that the petitioner "has in no respect been placed in a worse position than he was in before the votes referred to were passed by the town and the release tendered, unless by his refusal to receive the money so deposited with the treasurer." The respondents then have done no act whereby the petitioner has been deceived or misled to his prejudice. The petitioner attempted to recover his land by negotiation and failed. The failure left him as he was before negotiation. The Superior Court therefore, in refusing to grant him relief, committed no error.

VOL. XLII.—49

In this opinion the other judges concurred; except FOSTER, J., who dissented.