JOHN E. DOHERTY, et al.

*vs.*

MARY S. RUSSELL.

Knox.   Opinion July 5, 1917.

*Real Action.   Life tenants.   Husband and wife.   Divorce as affecting life interest
of husband and wife, or either of them.   Abandonment of rights in
real estate.   Necessary proof to establish adverse
possession as between co-tenants.*

1.   In the absence of a decree affecting her property rights in the divorce pro-
ceedings the defendant's interest as a life tenant in the property involved in the
suit remained unaffected by the decree of divorce.   Such decree terminated the
marriage relation.   The property rights of the husband prior to the divorce
became his individual property after the divorce, and the separate property of
the wife became her individual property.   As to conveyances to them both,
each holds the legal title to one-half under such circumstances.   The property
rights of the parties are not affected by the decree unless they are brought
before the court in some appropriate manner.

2.   The defendant had the right, divorce having been had, to remarry, and such
marriage did not affect her rights as a tenant for life, and co-tenant with her
former husband.

3.   The defendant's life estate was not extinguished by abandonment.   She did
abandon her husband, and intended to, but the record fails to show satisfactory
evidence of an intention on her part to abandon her interest in the real estate.
Abandonment includes both the intention to abandon and the external act
by which the intention is carried into effect.   The intention is the first and
paramount inquiry; there can be no abandonment without the intention to
abandon, and the burden of showing an abandonment rests upon the one who
asserts it.

4.   Nor has the defendant been deprived of her rights as life tenant of the
demanded premises by disseizin or adverse possession.   It follows that the
plaintiffs as remainder-men are not justified in asserting their claim upon the
reasons set up, for the right of action of the remainder-man or reversioner does
not accrue until the death of the tenant for life.

Writ of entry to recover certain land in South Thomaston, County
of Knox.   Defendant filed plea of general issue.   Case reported to
Law Court upon agreed statement of facts, upon which the court is

to determine the legal rights of the parties and all questions of law arising therefrom, and to render final judgment in accordance therewith. Judgment in accordance with opinion.

Case stated in opinion.

*Frank B. Miller*, for plaintiffs.

*L. M. Staples*, for defendant.

SITTING: SAVAGE, C. J., CORNISH, BIRD, HALEY, HANSON, MADIGAN, JJ.

HANSON, J. Real action, reported to this court upon the following agreed statement of facts:

"Cornelius Hanrahan of Rockland, Maine, died April 15th, 1893 testate, his last will and testament being duly proved and allowed by the Probate Court of the County of Knox on the third Tuesday of May, 1893. The 6th and 43rd items of said will, and which are the only items applicable to the purpose of this case, are as follows:

6th. I give, bequeath and devise to J. W. Simmons and his wife, the use and occupancy of the farm and buildings thereon where they now reside, in said South Thomaston, for and during their natural lives and the survivor of them for the period of his or her natural life, and all the stock and farming tools on said farm and all fire wood and fuel on said premises necessary for their family use. The provision, however is made to said Simmons and his wife on condition that they or the survivor of them, shall make no strip or waste of the wood land, nor shall they or the survivor of them, cut the same for the purpose of selling it in the market, and said parties, Simmons and his wife, shal keep the taxes on said farm and property fully paid from year to year, so long as the same may be occupied by them or either of them.

43rd. I give, bequeath and devise the rest, residue and remainder of my estate, real, personal and mixed, wherever found and however situated to my sister, Mary Doherty to have and to hold the same to her, her heirs and assigns forever.

No disposition of the Simmons farm at the termination of the life estate was made by said Hanrahan in his will other than what appears by said 43rd item.

Mary Doherty died Jan. 14, 1912, testate, and her will has been duly proved and allowed by the Probate Court of said Knox County. With the exception of one dollar given to each of her several heirs,

all her estate, both real and personal was devised and bequeathed to her two sons, John E. Doherty and Wm. Doherty, the plaintiffs in this action.

John W. Simmons was in possession of the premises at the time said Hanrahan will was probated, and remained continuously in possession until his death on the 23rd of April 1916.

On the 26th of September, 1896 a divorce was granted John W. Simmons from Mary S. Simmons who was his wife at the time of the execution and probating of the will of said Hanrahan for the cause of desertion. Mary S. Simmons subsequently contracted a marriage with one Edward G. Russell, with whom she is now living.

During the month of July 1916 the said Mary S. Russell, formerly Mary S. Simmons, entered upon the premises described in full in the declaration annexed to the writ in this action, cut and removed grass therefrom, and undertook to enter and occupy the buildings thereon.

John W. Simmons remarried after the divorce decreed him and was living with his wife on the premises at the time of his death. The widow has administered the estate, her first and final account having been filed and allowed by the Judge of Probate of said Knox County. Mrs. Simmons is not now in possession of the premises, she having removed therefrom shortly after the death of her husband."

The plaintiff's attorney claims that the defendant's interest in the life estate was extinguished, 1st, by desertion and subsequent remarriage, or 2nd, by abandonment of the premises, but we are unable to adopt either view.

The testator made life tenants of husband and wife; the language used created a life tenancy in one as well as in the other, the husband by name, the defendant by designation as "his wife", fixing her identity as firmly as if her individual name had been used instead of the words employed by the scrivener, and no other construction is possible from reading the whole will. The case is unique; nevertheless, the principles involved in its solution are well settled.

From the agreed facts it appears that the defendant deserted her husband and co-tenant some twenty-three years prior to the assertion of her present claim to the premises, and that her husband thereupon, for the cause of desertion, divorced her.

In the absence of a decree affecting her property rights in the divorce proceedings her interest as a life tenant in the property

involved in the suit remained unaffected by the decree of divorce. Such decree terminated the marriage relation. The property rights of the husband prior to the divorce became his individual property after the divorce, and the separate property of the wife became her individual property. As to conveyances to them both, each holds the legal title to one-half under such circumstances. 5 R. C. L. 862, 11 L. R. A. (N. S.) 103.

The property rights of the parties are not affected by the decree unless they are brought before the court in some appropriate manner. Id. See *Carey* v. *Mackey*, 82 Maine, 516.

As to remarriage, we are persuaded that, since the conveyance was to her as an individual she had the right, divorce having been had, to remarry, and that such marriage did not affect her rights as a tenant for life, and co-tenant with her former husband. Nor does her remarriage and resumption of possession accompanied by her second husband jeopardize her rights any more than the remarriage and occupancy of the property by her first husband and his second wife affected his rights. The terms of the will indicate no barrier to such act on the part of either, nor does the will prohibit the defendant taking possession the day her husband died and, if unmarried, remarrying immediately. It is clear that anything lawful not prohibited by the will, the life tenant may legally do.

ABANDONMENT:

The same elements enter into the consideration of counsel's claim that the "defendants life estate was extinguished by abandonment," and our conclusion is reached from a study of the same facts, and necessarily so. The defendant did abandon her husband, and her marital relations and intended to, but did she at the same time intend to abandon her property rights? That question must be answered clearly by the facts in the case, before the plaintiffs may prevail, and, as found in the claim to desertion and remarriage, we look in vain in the record to discover satisfactory evidence of an intention on her part to abandon her interest in the real estate. The plaintiffs insist that leaving the property in the sole possession of her husband for twenty-three years, and making no claim during the period is conclusive upon the question of abandonment, and cites the following cases as decisive in favor of their position. "Abandonment is the relinquishment of a right, the giving up of something to which one is entitled—it must be by the owner without being pressed by any duty,

necessity or utility to himself but simply because he desires no longer to possess the thing." *Middle Creek Ditch Co.* v. *Henry,* 39 Pac., 1954, 1958; 15 Mont., 558.

"To constitute an abandonment of a right there must be a clear unequivocal and decisive act of the party, showing a determination not to have the benefit intended." *Banks* v. *Banks,* 77 N. C., 186.

"There must be not only an intention to abandon but an actual abandonment." *Stevens* v. *Norfolk,* 42 Conn., 377; *Hickman* v. *Link,* 116 Mo., 123.

"A seizin once acquired is presumed to continue until it is shown that there has been an ouster or disseizin, or an abandonment." *Smith, Admr.,* v. *Booth Bros., Hurricane Isle Granite Co.,* 112 Maine, 297.

And we adopt the citations as authority here, and concur in the conclusions as being the settled law.

It is not questioned that abandonment includes both the intention to abandon and the external act by which the intention is carried into effect. Cyc., Vol. 1, page 4. *Livermore* v. *White,* 74 Maine, 452. In determining whether one has abandoned his property or rights, the intention is the first and paramount inquiry; there can be no abandonment without the intention to abandon. 1 R. C. L. 5. An intention to abandon will not be presumed, and the burden of showing an abandonment rests upon the one who asserts it. 1 Cyc., 7. See *Adams* v. *Hodgkins,* 109 Maine, 361; *Batchelder* v. *Robbins et als.,* 95 Maine, 59; *McLellan* v. *McFadden,* 114 Maine, 242. It will not be said as matter of law, that an absence from the land for any specified time amounts to an abandonment, even though such a fact might be strong evidence of abandonment. 1 R. C. L., 7, 135 A. S. R., 903. Note.

Non-user is not of itself sufficient to show an abandonment of a right; nor will neglect for more than twenty years to assert a title to an undivided interest in land, by one who has a valid title, operate as an abandonment, where there is no adverse possession. 1 Cyc., page 6; *Great Falls Co.* v. *Worster,* 15 N. H., 412; *Livermore* v. *White,* 74 Maine, 452; *Adams* v. *Hodgkins,* supra. Words and Phrases 2nd series, page 8; 1 Cyc., 1975.

Was there adverse possession? After divorce the former spouses may ordinarily, hold adversely to each other. 1 R. C. L., 756 and cases cited. Mr. Simmons, the husband, occupied the property just

the same after the separation as before. He occupied the whole property in defendant's absence as he had a right to do. Having the right to occupy the whole, what was there left to hold adversely, what part did he select and determine to hold in hostility to the defendant's rights? What could he add to his prior holding and right of occupancy?

It is difficult to see what new right or privilege he could assert or enjoy unless it were the right to live without the society of the defendant and that she had accorded him. He made no claim even to additional rights and performed no act which may be said to be in hostility to the defendant's title, except to secure a divorce and remarry, and these alone are not sufficient to establish adverse possession.

It is well settled that a life tenant cannot, by his declaration, acts, or claims of a greater or different estate, make it adverse so as to enable himself or those claiming under him to invoke the statute. 1 Cyc., 1057, and cases cited.

All statutes of limitations are based on the theory of laches, and no laches can be imputed to one who has no remedy or right of action; and to hold the bar of the statute could run against the title of a person so circumscribed would be subversive of justice and would be to deprive such person of his estate without his day in court. *Mettler* v. *Miller*, 129 Ill., 630.

It is not questioned that one co-tenant may oust the others, and set up an exclusive right of ownership in himself, and that an open, notorious, and hostile possession of this character for the statutory period will ripen into title as against the co-tenants who were ousted. 1 R. C. L. 7; See *Soper* v. *Lawrence*, 98 Maine, 277, quoting *Richardson* v. *Richardson*, 72 Maine, 409.

In *Mansfield* v. *McGinniss*, 86 Maine, 118, an action under the statute by one tenant in common of an undivided tract of land against a co-tenant for cutting trees upon the land, without giving the statute notice, the defendant claimed to have disseized the plaintiff and thus to have acquired a title to the whole tract by an adverse possession for more than twenty years; the court say, "as between co-tenants, evidence of long continued, visible, uninterrupted and even exclusive occupation by one co-tenant, is not enough to bar the rights of the other co-tenants. There must be evidence from which an ouster, a putting out, and keeping out, of the other co-tenants can be inferred."

No such evidence appears in the case stated.

It is therefore the opinion of the court that the defendant has not abandoned her rights as life tenant of the demanded premises, nor has she been deprived of the same by disseizin or adverse possession. It follows that the plaintiffs as remainder-men are not justified in asserting their claim upon the reasons set up, for the right of action of the remainder-men or reversioner does not accrue until the death of the tenant for life.    1 R. C. L., 743;  *Hooper* v. *Leavitt*, 109 Maine, 70.

*Judgment for the defendant.*