206 So.2d 234 (1968)
Virginia CORDREY, Appellant,
v.
Dr. Lee James CORDREY, Appellee.
No. 67-81.
District Court of Appeal of Florida. Second District.
January 17, 1968.
Rehearing Denied February 15, 1968.
*235 Robert Scott Kaufman, Miami, for appellant.
Sam Bucklew, of Bucklew, Ramsey & Stichter, Tampa, for appellee.
HOBSON, Judge.
The appellant, Virginia Cordrey, appeals a final decree of the chancellor below whereby the chancellor modified a "Separation Agreement" entered into between the parties on December 4, 1956 in the State of Ohio. Subsequently on January 30, 1959 a final decree of divorce was granted the appellant against the appellee by a court of the State of Pennsylvania. This final decree of divorce made no mention of the said "Separation Agreement" entered into on December 4, 1956.
The learned chancellor below has rendered an erudite opinion setting forth his findings of fact and conclusions of law with which we are in complete accord. We quote with approval his opinion and final decree:
"The plaintiff, Virginia Cordrey, brought an action in this court for specific performance of a written contract entitled `Separation Agreement' signed by her and the defendant, Dr. Lee James Cordrey, on the 4th day of December, 1956, in the State of Ohio. The defendant filed motions to dismiss the complaint and to strike plaintiff's prayer for attorney's fees. These motions were argued before the Court on May 11, 1966, and on May 20, 1966, the Court entered an order denying the former motion but granting the latter at that stage of the proceedings, orally announcing that the motion for attorney's fees might be renewed and considered by the Court at some future point, depending upon the issues raised by subsequent pleadings. In this same order the Court allowed the plaintiff's oral motion to amend her complaint, if necessary, to specifically allege the foreign laws claimed to be involved in the cause.
"On June 14, 1966, the Court allowed the defendant to amend his answer and to file a counterclaim in the proceedings. Pursuant thereto, an amended answer and counterclaim setting up Chapter 65, Florida Statutes [F.S.A.], as subjecting the question of alimony and support to review and modification, was filed on June 21, 1966.
"The case is at issue, therefore, on the defendant's amended answer to plaintiff's complaint and the defendant's counterclaim and the plaintiff's answer thereto.
"The Court has carefully considered all evidence offered by the parties, including oral testimony of witnesses adduced before the Court, testimony contained in several depositions taken by the parties and filed in the cause and all admissible documentary evidence relating thereto. The Court has also carefully examined certified copies of proceedings had and taken in the Court of Common Pleas No. 6 for the County of Philadelphia, Pennsylvania, in the divorce proceedings instituted by the plaintiff against the defendant, resulting in an absolute decree of divorce entered by the Court on January 30, 1959. In addition, the Court has listened to comprehensive argument of counsel for the respective parties and has studied and weighed their adversary *236 legal contentions as contained in copious briefs which have been filed with the Court.
"From the foregoing, the Court makes the following:

FINDINGS OF FACT
"The plaintiff, a dancing instructor who was born on October 20, 1920, in North Carolina, and the defendant, a physician who was born on November 30, 1921, in Delaware, were married to each other on June 14, 1945, in the plaintiff's home town of Landis, North Carolina, at the end of the defendant's senior year in the Medical College at Temple University which is located in Philadelphia, Pennsylvania. Shortly after the wedding ceremony, the couple moved to New Jersey to live for a year, after which they went to Largo, Florida, where the defendant was called for the performance of professional duties for a period of two years. Pursuing their migratory way, to meet the requirements of the defendant's advance in his medical specialty, they left Largo and established a residence in Chamblee, Georgia, living and cohabiting there for three more years while the defendant was stationed at the Veterans Administration Hospital at that place. From Chamblee, the plaintiff and defendant transferred to Philadelphia and maintained residence in that city as man and wife for an additional two years and one month, during which time the defendant pursued duties at the Shriners' Crippled Children's Hospital and taught at Temple University. Thereafter, the defendant became a member, for one year, of the faculty of Duke University Medical School at Durham, North Carolina. The plaintiff did not live in Durham with the defendant but made periodic peregrinations on week-ends from Philadelphia to Durham, usually returning to Philadelphia on Monday mornings for the purpose of pursuing her career in the teaching of dancing at Arthur Murray Studios.
"After completing his year on the faculty at Duke University, the defendant, still ambitiously pursuing his profession, moved on to Cleveland, Ohio, where he worked and resided until he came to Tampa, Florida, in 1958.
"The plaintiff retained her residence in Philadelphia during this period but also continued her round trip week-end flights, even to Cleveland, to visit with the defendant, until the separation of the parties in 1956, as hereinafter recited.
"The plaintiff enjoyed her work at the Arthur Murray Dancing Studies in Philadelphia and, apparently, preferred to make that city her operating base from which to commute regularly on her off-hours to whatever locality in which the defendant might be residing. The defendant, on the other hand, was intensely interested in his medical practice which he enjoyed to the extent that he was engrossed in its pursuit at least eighteen hours each day. He had no hobbies and no interests outside of his work, even though he lived alone except during the plaintiff's visits.
"No children were born of the union of the plaintiff and defendant and none were ever planned by them.
"Because of their migratory and desultory existence, together with the stresses and strains, placed upon them by their divergent careers, the parties did not and could not travel together in a common main stream of life and were caught in the unpredictable and swift eddies of modern society, robbing them from the beginning of a normal and harmonious marriage. Prior to the time that the defendant became a member of the faculty of Duke University at Durham, North Carolina, the parties had experienced difficulties because of the defendant's alleged infidelities and indiscretions, some of which have not been denied by him, when the plaintiff was away. Embarrassing confrontation, relative to the defendant's disloyalty, created impasses between the parties and temporary retreats by the plaintiff from the marital relationship. These retreats usually ended upon the defendant's promise of more circumspect behaviour. The only occasions during which *237 the plaintiff and defendant lived together in peaceful communion as husband and wife after the defendant moved to Durham were on the week-end visits of the wife, during the few periods of reconciliation and withdrawal from these emotional impasses until their final separation which occurred in May, 1956, according to the testimony of the plaintiff in the divorce proceedings which finally and completely severed the union between the parties. In her deposition filed in the present cause, she testified that the final separation of the parties occurred in July or August of 1956 and that, thereafter, on December 4, 1956, the date on which the separation agreement was signed, the defendant requested her to return to him as his wife, both before and after signing the agreement. She further testified that his request before the signed agreement was refused, largely because of the infelicitous manner in which it was advanced by the defendant. She testified that, although the defendant made love to her on the occasion of the request after the signing, she refused because she hoped the separation would bring about a sound reconciliation later.
"The separation agreement provided that in each calendar year, beginning with the calendar year 1957, the defendant would pay to the plaintiff for her support an amount equal to 33 1/3% of his net income, said payments to be in periodic installments as provided in the agreement. It also provided that the obligations of the defendant to pay any money to the plaintiff would cease upon her remarriage or upon death of either of the parties.
"The agreement further provided that life insurance in the amount of $50,000 would be provided as a guarantee to said wife should the defendant die leaving the plaintiff-wife surviving and unmarried. It also provided that the defendant would deposit the sum of $10,000 to be paid to the plaintiff in the event a final decree of divorce was obtained by her. This sum, which had been placed in escrow, was received by the wife upon entry of the final decree of divorce. In addition, the defendant delivered to the plaintiff bonds which had been held jointly and the household furniture except for a bedroom suite.
"The parties lived separate and apart under the separation agreement for a period of approximately two years and on January 3, 1959, [sic] the final decree of divorce was obtained by the plaintiff against the defendant in the Court of Common Pleas No. 6 for the County of Philadelphia, State of Pennsylvania, upon the grounds of `indignities to the person.'
"The said final decree of divorce entered by the Pennsylvania Court made no mention of any agreement to pay support or alimony and made no provisions for the payment by the defendant to the plaintiff for any support whatsoever.
"The plaintiff may be adequately and satisfactorily maintained in the style and means to which she is accustomed on an income not exceeding $1,000 per month. The plaintiff admitted that $1,000 per month would satisfy her needs in this regard, and, under the circumstances, this amount is reasonable. The defendant has the present financial ability to meet such needs.
"The defendant subsequently remarried and continued to make support payments to the plaintiff under the separation agreement until the year 1965, during which year the defendant paid to the plaintiff the sum of $5,000.
"As of the date of this decree, the plaintiff has never remarried.
"During all of the negotiations relative to the drafting and execution of the separation agreement, the defendant, by his own choice, was not represented by legal counsel. The plaintiff was represented by counsel in all matters and negotiations pertaining to the agreement and the divorce.
"The separation agreement made no provision for payment of attorney's fees, but, inasmuch as some relief is being afforded the wife, as a result of this action upon *238 the pleadings, the plaintiff is entitled to a proportionate attorney's fee based upon a reasonable value of services rendered by the attorney for the same. The Court finds that the sum of $6,500 is a reasonable proportionate fee. The defendant has paid to the plaintiff, under the agreement, up to the present time, the amount of $156,939.18. As of the date of the filing of this proceeding on March 11, 1966, the defendant owed to the plaintiff, under the terms of the separation agreement, the sum of $98,542.42 plus accrued interest at 6% per annum from the due dates of the various installments of $1,864.17.
"At no time before the institution of this suit did the plaintiff make any demand to inspect the records of the defendant relative to the payments due her under the said agreement.
"The plaintiff is in basically good health. She owns a building containing ten apartments and a shoe repair shop in Philadelphia, Pennsylvania, for which she paid approximately $39,500, and a small grocery store in Landis, North Carolina, the purchase price of which was $12,000 and on which there is still owing a balance of some $5,000. There is a mortgage on the apartment building in Philadelphia in the approximate amount of $10,000. She owns bonds in the amount of approximately $2,000 and mutual fund shares which approximate $5,000. At the present time she is living in Landis, North Carolina, with her invalid father whom she is nursing. The plaintiff is a high school graduate and has studied business administration. Her income from dancing instructions, which she is unable to perform at the present time due to injuries to her back and ankle, ranged from $5,000 to $10,000. She also owns a modest home in the Poconos.
"The defendant has developed into a skillful and well-known specialist and his income from his practice has been more than substantial during the past several years. His net worth is approximately $150,000. His estimated gross income for 1966 is over $300,000; however, he has been overworked and his prospects for the future indicate that his income will be sharply curtailed if he is to maintain his health and practice. The plaintiff contributed the lion's share of financial assistance to the defendant in the early years of their marriage and loyally and vigorously aided him during that time to complete his training in his medical specialty. At the time the parties were married, the defendant was working for a small monthly salary. At the time of the separation between the parties he received a respectable or better income and his prospects for professional and financial success were apparently very good. However, it was never anticipated that his income would reach its present proportion. His income before taxes for 1956 was $61,505.71.
"The separation agreement between the parties has never been reviewed or approved in any judicial proceeding or made a part of any decree of any judicial tribunal.
"The Court has noted with disapproval the attitude and conduct of the defendant, which brought about the divorce, but the Court is likewise cognizant, from the evidence, that the plaintiff voluntarily lived apart from the defendant for a number of years and saw fit to visit him only on week-ends. This was by choice, which prevented her from making any real, intelligent and effective attempt to save and preserve the marriage of the parties after it was placed in jeopardy by the defendant's indiscretion and infelicity and the plaintiff's reaction thereto. On the contrary, the plaintiff, however, unintentionally, contributed to the situation in which the defendant, by his behaviour, placed himself. The Court is led to the conclusion that the attitude and conduct of the plaintiff, as well as the contretemps of the defendant resulting from the circumstances of his unwise extra-marital associations precipitated a condition which ultimately brought about the execution of the separation agreement *239 and subsequent dissolution of the marriage. The Court is also persuaded, from the evidence, that the defendant's real or fancied cul-de-sac, created by what he believed to be threats of publicity and scandal concerning his associations, was the overwhelming reason for his entering the separation agreement requiring him to pay the plaintiff 1/3 of his future net income plus a flat sum of $10,000 for obtaining the divorce.
"Based upon the foregoing, the Court makes the following:

CONCLUSIONS OF LAW
"1. The Court has jurisdiction of the parties and the subject matter of this litigation.
"2. The agreement herein sued upon is an agreement to pay alimony or to make periodic support payments in lieu of alimony and is not a property settlement agreement as construed and determined by the law of Florida. (Kosch v. Kosch, [Fla.,] 113 So.2d 547)
"3. The bringing of this action by the plaintiff to enforce the terms of the subject agreement to pay alimony or support in lieu of alimony, and the answer and countercliam [sic] of the defendant, confer upon this court the power and impose upon it the duty to review and adjudicate the reasonableness and fairness of the terms of the agreement, which has never been reviewed or ruled upon by any other judicial tribunal, as provided under the provisions of Chapter 65, Florida Statutes [F.S.A.]
"4. In the absence of specific pleading and proof of any foreign law applicable to this case, the law of Florida should obtain and control this case. (Kingston v. Quimby, [Fla.,] 80 So.2d 455; Miller v. Shulman, [Fla.App.,] 122 So.2d 589; Hieber v. Hieber, [Fla.App.,] 151 So.2d 646)
"5. The present needs of the wife and the former husband's ability to meet those needs, as determined by applicable principles of law, are to be considered by the Court in its determination of the amount of alimony or support to which the wife is fairly and reasonably entitled under contemporary facts and circumstances and the parties may not, by contract, divest the Court of its discretion in this regard.
"6. The terms of the separation agreement are inequitable, as a matter of law, and must be modified to comport with fairness.
"7. While the final decree of divorce obtained by the plaintiff-wife contains no provisions for alimony or support, the Court further concludes that it would also be inequitable to eliminate all obligations on the part of the defendant for support or to relieve him of his obligations under the agreement prior to the date of the filing of this proceeding.
"8. The case of McAllister v. McAllister, [147 Fla. 647,] 3 So.2d 351, relied upon by the plaintiff, does not govern the instant case inasmuch as the defendant in McAllister did not interpose the defense made here under Chapter 65, Florida Statutes [F.S.A.].
"9. The monies due for the year 1965, under the provisions of the agreement and up to March 11, 1966, are owing and payable by the defendant to the plaintiff. The defendant is also legally obligated to pay the plaintiff support since March 11, 1966, upon the basis of $1,000 per month.
"It is, therefore, ORDERED AND DECREED as follows:
"1. The defendant, Lee James Cordrey, shall pay to the plaintiff, Virginia Cordrey, the sum of $1,000 per month for her support and maintenance so long as she lives and remains unmarried, beginning on the 11th day of March, 1966.
"2. The defendant, Lee James Cordrey, shall pay to the plaintiff, Virginia Cordrey, in addition to the above amounts, the sum of $100,406.59, the amount in default, *240 including interest, under the terms of the separation agreement sued upon, with interest at 6% from the date of this decree. The defendant is hereby authorized to pay the said amount now in default, under the said agreement, to the plaintiff in equal monthly installments of at least $1,000 per month, said installments to be applied first to interest and the remainder to principal on the said total amount in default and to continue until said amount in default is paid in full.
"3. All payments herein ordered shall be paid by the defendant, Lee James Cordrey, to the plaintiff, Virginia Cordrey, until the remarriage of the plaintiff, Virginia Cordrey, or the death of either party to this proceeding, unless hereafter further modified by the Court.
"4. The defendant, Lee James Cordrey, shall also pay Robert Scott Kaufman, attorney for the plaintiff, the sum of $6,500 for legal services rendered to the plaintiff in this suit, payable within thirty days from the entry of this decree.
"5. The costs of this proceeding shall be paid by the defendant, Lee James Cordrey, as hereinafter determined and taxed by the Court.
"6. The sum of $7500 paid to the plaintiff by the defendant as relief pendente lite in this suit shall be substracted [sic] from the amount in default herein ordered to be paid to the plaintiff.
"DONE AND ORDERED in Chambers at Tampa, Hillsborough County, Florida, this 9th day of January, 1967."
We find that the chancellor was eminently correct in concluding that he had the power and the duty to review and adjudicate the reasonableness and fairness of the said "Separation Agreement" which had never been reviewed by any judicial tribunal. Florida Statute 65.15, F.S.A. provides as follows:
"Whenever any husband and wife heretofore, or hereafter, shall have entered into any agreement providing for the payments for, or in lieu of, separate support, maintenance or alimony, whether in connection with any action for divorce or separate maintenance, or with any voluntary property settlement, or whenever any husband has pursuant to the decree of any court of competent jurisdiction been required to make to his wife any such payments, and the circumstances of the parties or the financial ability of the husband shall have been changed since the execution of such agreement, or the rendition of such decree, either party may apply to the circuit court of the circuit in which the parties, or either of them, shall have resided at the date of the execution of such agreement, or shall reside at the date of such application, or in which such agreement shall have been executed, or in which such decree shall have been rendered, for an order and judgment decreasing or increasing the amount of such separate support, maintenance or alimony, and the court, after giving both parties an opportunity to be heard, and to introduce evidence relevant to the issue, shall make such order and judgment as justice and equity shall require, with due regard to the changed circumstances and the financial ability of the husband, decreasing or increasing or confirming the amount of separate support, maintenance or alimony provided for in such agreement, or in such decree.
* * * * * *
"This section is declaratory of existing public policy and laws of this state, which is hereby affirmed and confirmed in conformance with the provisions hereof, and it shall be the duty of the judges of the circuit courts of this state to construe liberally the provisions hereof in order to effect the objects and purposes hereof and the public policy of the state as hereby declared." (Emphasis added.)
This statute gives the circuit court authority to review the "Separation Agreement" because it is an agreement and was *241 not a final determination of the property rights of the parties as between themselves as far as alimony was concerned but was an agreement to pay alimony or to make periodic support payments in lieu of alimony. See Kosch v. Kosch, Fla. 1959, 113 So.2d 547.
The modification statute does not require that the agreement entered into voluntarily by the parties be approved or even reviewed by any judicial tribunal prior to either party applying to the circuit court for modification thereof.
Under Florida Statute 65.15, F.S.A., in order to modify the agreement it is necessary to show one of two things; either the circumstances of the parties have been changed since the execution of such agreement or the financial ability of the husband shall have been changed since the execution of such agreement. There was overwhelming evidence of the changes in the circumstances of the parties in the case sub judice subsequent to the execution of the agreement.
It is also noted that the legislature has pronounced in the statute itself that the provisions thereof shall be liberally construed.
The appellee has filed a cross assignment of error whereby he contends that the chancellor erred in awarding the appellant's attorney attorney's fees to be paid by the appellee. His reasoning is that inasmuch as this action is not an action to enforce a decree or order of the court providing for the payment of alimony that Section 65.16, Florida Statutes 1965, F.S.A., does not authorize the granting of attorney's fees to the appellant.
It has been held in Simpson v. Simpson, Fla. 1953, 63 So.2d 764, that where the husband petitions under Section 65.15, Florida Statutes 1965, F.S.A., for a reduction in the amount of alimony awarded in a former decree that the wife is entitled to a reasonable attorney's fee in defending against such a petition.
It is our opinion that Sections 65.15 and 65.16, Florida Statutes 1965, F.S.A., must be read in pari materia. The husband having the right to modify a voluntary property agreement such as presented here under Section 65.15 should also be liable for attorney's fees to the divorced wife for her defense of his petition. This is so notwithstanding the fact that the property settlement sought to be modified had never been reviewed by a judicial tribunal.
Finding no reversible error in the final decree appealed, it is hereby affirmed.
LILES, C.J., and PIERCE, J., concur.