242 So.2d 786 (1970)
Ruth M. SPENCER, Appellant,
v.
James M. SPENCER, Appellee.
No. 69-316.
District Court of Appeal of Florida, Fourth District.
November 6, 1970.
Rehearing Denied January 28, 1971.
*787 Harry G. Carratt, of Morgan, Carratt & O'Connor, Fort Lauderdale, for appellant.
Glenn Bryan Smith, Fort Lauderdale, for appellee.
McCAIN, Judge.
Ruth M. Spencer, appellant herein and defendant in the divorce action below, appeals from a final judgment of divorce granted in favor of her husband and essentially awarding her custody of the couple's minor child, $300.00 per month in support for the child and $260.00 per month to her as alimony.
Some six months prior to the time the husband filed for divorce the parties separated and entered into a written document entitled "Agreement" which included child support ($300.00 per month) and alimony ($720.00 per month) provisions. It also contained provisions relative to property rights. This agreement ultimately was admitted into evidence after a series of circuitous events, however, the final judgment, making no reference to it, allowed only $260.00 per month for alimony.
Since the final judgment makes no reference to the agreement, we cannot determine whether the trial judge rejected or modified it, however, this distinction is of no consequence in light of the following.
As one of her contentions on appeal, appellant alleges this reduction as error on the part of the trial court. In support of her contention, appellant cites several cases supporting the theory that Section 61.14, Florida Statutes, F.S.A. (formerly § 65.15, F.S.), which permits judicial modification of alimony and support arrangements, does not permit modification of property settlements. See Underwood v. Underwood, Fla. 1953, 64 So.2d 281; Clark v. Clark, Fla. 1955, 79 So.2d 426; Salomon v. Salomon, Fla. 1967, 196 So.2d 111; Howell v. Howell, Fla.App. 1964, 164 So.2d 231; and Fort v. Fort, Fla. 1956, 90 So.2d 313.
Appellant's position, however, is untenable for several reasons. We are convinced that appellant disavowed the agreement by her conduct during the proceedings below, to wit: (1) by her motion for temporary relief in the trial court asking for a sum of money substantially in excess of that provided for by the agreement; (2) by her testimony that her signature on the agreement was coerced through fear that her husband would go into bankruptcy and cause a loss of all the family assets; and (3) by her answer to plaintiff's amended complaint (alleging appellant's repudiation of the agreement) in which she *788 counterclaimed for separate maintenance without making reference to any of the terms or provisions of the agreement. In view of appellant's repudiation of the agreement below, she cannot now be allowed to contend on appeal that the agreement was a valid one and should have been enforced by the trial court.
Additionally, the agreement in question was not a true "property settlement agreement" within contemplation of those cases cited above. A distinction exists between true property settlement agreements and other types of separation agreements which not only provide for a division of property but also provide for custody and support of minor children and alimony for the wife. In instances of the latter, a modification of custody of minors, their support and modification of the award of alimony for the wife is not thwarted. Putnam v. Putnam, Fla.App. 1969, 226 So.2d 30; Ohmes v. Ohmes, Fla.App. 1967, 200 So.2d 849; Kosch v. Kosch, Fla. 1959, 113 So.2d 547.
Furthermore, judicial modification of specific awards of alimony contained in an agreement is explicitly dealt with by Section 61.14, Florida Statutes:
"(1) When a husband and wife have entered or hereafter enter into an agreement for payments for * * * alimony, whether in connection with an action for divorce or separate maintenance or with any voluntary property settlement * * either party may apply * * * for a judgment decreasing or increasing the amount of * * * alimony * * *."
(Emphasis added.)
There is also ample case authority to support the theory that the trial court, in the exercise of its discretion, is not bound by the provisions of a written agreement of the parties relative to alimony, and is not bound to accept the agreement in its entirety, but that the court may accept a portion of such agreement and reject a portion of it. Dawkins v. Dawkins, Fla.App. 1965, 172 So.2d 633; Gelfo v. Gelfo, Fla.App. 1967, 198 So.2d 353.
Ordinarily, at this juncture, we would simply conclude that the trial judge was exercising his judicial discretion in making a monthly award of alimony of $260.00, and no abuse of discretion being demonstrated, would affirm. However, because of our following determination that certain errors were committed warranting a new trial, during which the financial circumstances of the husband may again be subject to further review, we must reverse.
Appellant's next point concerns an attempt by her counsel to depose the husband regarding his use of a certain telephone not located in his home, and his payments to the telephone company for calls from that phone. The husband refused, on advice of counsel, to answer such questions, as irrelevant to the action. A motion to compel answers was made in accordance with Rule 1.380, F.R.C.P., 30 F.S.A., and was denied by the trial judge. We believe the trial judge's holding was in error.
Florida Rule 1.280(b) defines the permissible scope of a discovery examination as follows:
"Unless otherwise ordered by the court as provided herein, the deponent may be examined regarding any matter, not privileged, which is relevant to the subject matter of the pending action, whether it relates to the claim or defense of the examining party or to the claim or defense of any other party, including the existence, description, nature, custody, condition and location of any books, documents or other tangible things and the identity and location of persons having knowledge of relevant facts. It is not ground for objection that the testimony will be inadmissible at the trial if the testimony sought appears reasonably calculated to lead to the discovery of admissible evidence."
In the official comment to this rule the authors make the following statement: "The objection that the examining party is on a `fishing expedition' is no longer available to preclude him from inquiring *789 into all of the facts and circumstances that may have a bearing on either side of the case." Rule 1.280(b), Authors' Comment set out at 30 F.S.A. 379.
We recognize that a great deal of discretion is vested in the trial judge with regard to discovery matters. See Charles Sales Corp. v. Rovenger, Fla. 1956, 88 So.2d 551, and Carson v. City of Fort Lauderdale, Fla. App. 1965, 173 So.2d 743. However, such discretion should not be construed so broadly that it frustrates the beneficial purposes served by the Rule: "* * * to assist the administration of justice, to aid a party in preparing and presenting his case for his defense, to advance the function of a trial in ascertaining the truth, and to accelerate the disposition of suits." Southern Mill Creek Products Co. v. Delta Chem. Co., Fla. App. 1967, 203 So.2d 53.
It is impossible to know precisely what information appellant hoped to gain by her questions relating to the telephone calls and payments, but several areas of possible relevancy suggest themselves. Certainly the questions had some bearing on the husband's financial circumstances generally, which are always relevant in a divorce action to the husband's ability to support his minor child, and to pay alimony to his wife. See 10 Fla.Jur., Divorce, §§ 166, 271. Additionally, appellant may have wished to ascertain whether she had sufficient grounds to seek an amendment to her answer and/or counterclaim (under Rule 1.190) pleading recrimination and/or adultery. It appears from later testimony that the husband may have had some kind of a relationship with another woman and that the phone in question may have been in her apartment, and under such circumstances, appellant may have asked for and been granted an amendment to her pleading before trial, had she sufficient evidence before her. Finally, it is to be noted that even if the answers to appellant's questions had not had the expected relevancy and produced no evidence admissible at trial, the rule contemplates only that the testimony sought "appears reasonably calculated to lead to the discovery of admissible evidence" (emphasis added), not that it must do so. Therefore, we think the trial judge should have compelled husband's answers and erred by refusing to do so.
Appellant also contends that the trial judge erred in refusing to force the parties' 23-year-old son to answer questions put to him at trial by his mother's attorney regarding his father's relationship with another woman. In several instances the judge overruled specific objections to the son's testimony, but refused to force the young man to testify regarding the matter of his father and his alleged mistress. The judge made specific statements to this effect at several points in the record, of which the following is typical: "You're going to have to find another witness. You're not going to get this boy to testify in front of me." No question of competency or privilege was raised, nor in most instances were other objections to the testimony of the young man made.
Generally, a trial judge does not have discretion to refuse to admit relevant testimony that is not merely cumulative, unless it is inadmissible by virtue of some recognized rule of evidence, such as the hearsay or opinion rules. The Third District Court of Appeal, in Dings v. Dings, Fla.App. 1964, 161 So.2d 227, has recognized an exception to this general proposition with regard to testimony by children of the parties in a divorce proceeding. That court, without stating whether the children in question were minors or adults, made the following statement: "The chancellor's refusal to permit the children of the marriage to testify was not reversible error. The decision as to the propriety of such an act must rest with the chancellor, and this exercise of discretion will not be interfered with on appeal, unless a substantial error is demonstrated."
We do not quarrel with this result, insofar as it applies to minor children, since it would appear to be good public policy not to place a minor child, who is *790 eventually to be placed in the custody of one or the other parent, in a position where he must "take sides" unless in the trial judge's opinion this is essential to a fair determination of the issues. However, where the child is an adult, this consideration disappears, and apart from it, there is little reason for excluding otherwise relevant and admissible testimony. Neither the fact that the young man is placed in the awkward position of testifying against a parent, nor the trial judge's feeling that the attorney's use of him as a witness is in poor taste, are persuasive when weighed against the function of courts to administer justice fairly and impartially between the parties. While we can appreciate the trial judge's disapproval of the trial tactics of defendant-wife, we nevertheless conclude that testimony of adult children in a divorce action must be admitted, if relevant, otherwise admissible, and not merely cumulative.
Since our reversal of the trial court's judgment demands that a new trial be held, it is not necessary on this appeal to determine whether sufficient corroboration for the divorce decree existed.
Child custody, child support and visitation rights are not in contention, and the record does not reflect any basis for argument on these.
One final assertion of error that deserves treatment is appellant's contention that the trial court's decision in contempt proceedings against husband's landlord, Stanley Mavromates, was erroneous. Appellant first subpoenaed Mavromates by a subpoena duces tecum on November 1, 1968, to appear at the trial of the case. Mavromates appeared with papers relating to the husband's tenancy, and then apparently left court without testifying and without being excused. He was again subpoenaed with a subpoena duces tecum a month later to appear for a deposition and produce additional records. He did not comply with this subpoena and did not at that time offer any excuse for his failure to appear. Appellant then moved for an order of contempt against Mavromates which the court granted after the final decree of divorce had been entered. Mavromates did not appear at his contempt hearing. When he appeared for sentencing, however, the court vacated its order finding him in contempt, without stating its reasons for doing so. At the time appellant made her motion for contempt against Mavromates, the court noted that apparently Mavromates was under the impression that once he had brought the requested records to the court he had nothing more to do and was not under any obligation to appear again.
Rule 1.410(e), F.R.C.P., as follows, is the controlling section in Florida governing contempt citations for failure to comply with a subpoena:
"(e) Contempt. Failure by any person without adequate excuse to obey a subpoena served upon him may be deemed a contempt of the court from which the subpoena issued."
It is apparent that this provision vests wide discretion in the trial judge with regard to contempt orders. He may find, at the outset, that a failure to appear is adequately excused, and therefore should not be deemed a contempt. Moreover, even if he finds that a witness is without adequate excuse under the rule, the use of the permissive word "may" in the rule indicates that a finding of contempt is still not mandatory. Recently, in construing Section 905.17, Florida Statutes, F.S.A., which provides that a grand juror failing to comply with the prohibitions of the statute "may be held in contempt of court" (emphasis added), this court in Harper v. State, Fla.App. 1968, 217 So.2d 591, concluded:
"* * * Section 905.17 provides only that violators may be found in contempt; it does not constitute a mandate for conviction. This is consistent with the common law which recognizes that, in matters of this kind, the power to punish for contempt is designed for the protection of the court and the application for such punishment is addressed to the court's discretion. Orr, for Use and Benefit of Walton v. Orr, 1939, 141 Fla. 112, 192 So. 466. "* * *

*791 "* * * The general test as to whether the act in question constituted contempt depends upon the nature and reasonable tendencies of the matter complained of to directly affect the administration of justice. * * *"
As in Harper v. State, we conclude here that Rule 1.410(e) provides only that violators may be found in contempt and does not constitute a mandate for conviction. The record is devoid of a transcript of the proceedings at the contempt and sentencing hearings. Therefore, the trial judge in his discretion may have found that Mavromates' failure to appear was adequately excused and/or had no adverse effect on the administration of justice, inasmuch as he had produced the required papers when subpoenaed the first time. Thus, no error is demonstrated.
Accordingly, that portion of the final judgment appealed from awarding child custody, child support and visitation privileges is affirmed, and in all other respects the judgment is reversed, and this cause is remanded for a new trial consistent with the views expressed herein.
Affirmed in part, reversed in part, and remanded.
WALDEN and OWEN, JJ., concur.