Patricia C. LINDSLEY et al.

v.

Frederick O. LINDSLEY.

Supreme Judicial Court of Maine.

June 6, 1977.

**312**

Murray, Plumb & Murray by Peter S. Plumb, John C. Lightbody, Portland, for plaintiffs.

Theodore H. Kurtz, South Paris, for defendant.

Before DUFRESNE, C. J., and POMEROY, WERNICK, ARCHIBALD, DELAHANTY and GODFREY, JJ.

WERNICK, Justice.

Plaintiffs Patricia C. Lindsley and Lloyd I. Isler, Marvin Lewis and William Shorenstein—Patricia Lindsley's attorneys in the Florida proceedings hereinafter described—instituted a civil action against defendant Frederick O. Lindsley in the Superior Court (Cumberland County) to recover certain sums designated alimony and legal fees as embodied in a judgment of the Circuit Court of Florida.[1]

The answer of defendant husband included a counterclaim. The first count of the counterclaim asks an adjudication that Patricia Lindsley is liable to indemnify defendant should he be ordered to pay any amount of money to her in excess of $75 for any week since August 9, 1971 or any amount of money to plaintiffs Isler, Lewis and Shorenstein. The counterclaim asserts that such liability to indemnify arose by virtue of Patricia Lindsley's alleged violation of the provisions concerning payments of support and counsel fees contained in a separation agreement which Mr. & Mrs. Lindsley had executed in the State of New York on February 23, 1965. Plaintiffs moved for summary judgment in their favor as to this first count of defendant's counterclaim. The presiding Justice granted the motion and ordered summary judgment for plaintiffs. Defendant has appeal-ed from the judgment entered in plaintiffs' favor.[2]

We deny the appeal.

The following facts are undisputed.

The Lindsleys married in New Jersey on February 11, 1960. By late 1962 they had determined to separate. During almost an entire decade, from 1962 to 1971, they lived apart most of the time. There are no children of the marriage. On February 23, 1965 the Lindsleys executed in New York the separation agreement central to Mr. Lindsley's assertions in count one of his counterclaim.

The provisions of that agreement here pertinent are threefold.

First, Mr. Lindsley undertook to pay $75 per week to his wife during her lifetime (or until her remarriage) "for her support and maintenance, use and comfort." In return for this agreement, Mrs. Lindsley discharged her husband from any other claims "for alimony or for any other provision for maintenance and support."

Second, the Lindsleys generally released one another of all present and future obligations and divested themselves of present and future marital interests. Mrs. Lindsley agreed to reimburse her husband for any future amounts he might expend for her debts, including, specifically, legal fees.

Third, the agreement included a covenant that:

"[N]othing contained in this agreement shall bar the institution of an action for divorce in any competent jurisdiction . . . .. Any decree of divorce obtained by either party shall refer to, follow and embody the provisions of this agreement . . . .. This agreement shall survive

---

1. As explained more fully, infra, Frederick Lindsley had obtained a judgment of divorce in the Circuit Court of Florida on August 9, 1971. That judgment ordered Frederick Lindsley to pay alimony to Patricia Lindsley and also to pay her counsel fees incurred in connection with the divorce. On September 20, 1971, plaintiffs sought and obtained a Florida judgment for alimony arrears of $1,525.00 plus interest, and legal fees of $7,500.00 plus interest. Their present complaint is seeking enforcement of that judgment—adjusted daily for increasing arrears and interest—as well as being premised on the underlying divorce judgment.

2. The Justice below expressly determined, in compliance with Rule 54(b) M.R.C.P., that the judgment was to be a final judgment and there was "no just reason for delay." The judgment on count one of the counterclaim is thus appealable to this Court.

any decree of divorce, and the provisions of this agreement shall not merge in, nor be superseded by any divorce decree or judgment."

In 1970 Mr. Lindsley sued for divorce in the Circuit Court of Florida. Mrs. Lindsley appeared and counterclaimed for separate maintenance. Mr. Lindsley brought to the attention of the Florida court the 1965 separation agreement, asserting, first, that the Florida court should adopt its provisions as part of its decree and, second, because the agreement by its own terms purported to have binding effect as an agreement between the parties independently of any divorce decree, the court should refrain from merging the contract into the decree. Mrs. Lindsley urged the Florida court to nullify the 1965 agreement either by merging it into the divorce decree or adjudicating that a reconciliation of the parties subsequent to 1965 had vitiated the contract obligations. She sought alimony in an amount greater than the $75 per week set forth in the 1965 agreement as well as payment by Mr. Lindsley of the fees of her attorneys in the divorce action.

On August 9, 1971, the Circuit Court of Florida awarded Mr. Lindsley a divorce and denied Mrs. Lindsley's counterclaim for separate maintenance. Additionally, the court ordered Mr. Lindsley to pay alimony at the rate of $125 per week and attorney fees in the amount of $7,500.00. In so acting, the Florida court made no express mention of the 1965 separation agreement and offered no explanation concerning the interrelationship between the 1965 agreement and its decision.

Neither party appealed from the divorce judgment. Since Mr. Lindsley had not performed the obligations imposed by it, Mrs. Lindsley and her attorneys instituted the present civil proceeding against him in Maine to achieve enforcement of the Florida court's judgment for alimony arrearage and counsel fees. (See n. 1, supra). As asserted in count one of his counterclaim, Mr. Lindsley's claim is that the 1965 agreement remained in force, entitled him to the difference between $125 and $75 per week and obligated Mrs. Lindsley to indemnify him for any legal fees for which she was indebted.

The viability of count one of Mr. Lindsley's counterclaim [3] turns, in essence, on the proper interpretation of the legal effect of the Florida divorce judgment. In Mr. Lindsley's view, it did not affect his right to enforce against his wife the entirety, or any part, of the obligation which the 1965 separation agreement imposed upon her as a party to it.

Plaintiffs disagree. They read the divorce judgment as nullifying the 1965 agreement, if not in its entirety at least in those parts of it pertaining to alimony and legal fees. The Justice presiding in the Superior Court decided expressly that the Florida judgment invalidated all of the 1965 agreement.

We uphold the summary judgment for plaintiffs but on grounds different from those advanced by the presiding Justice. We conclude that we need not presently decide (and we intimate no opinion concerning) whether all, or some, of the provisions of their 1965 separation agreement may remain binding on the Lindsleys *for any purposes other than are involved in the instant proceeding.* Instead, we decide only that: (1) the Florida judgment upon which plaintiffs have sued in Maine is predicated upon, and embodies, an adjudication by the Florida court—appropriately made within its powers under Florida law as a court vested with divorce jurisdiction—that the 1965 separation agreement ceased to have binding effect upon Mr. and Mrs. Lindsley *in the specific respects* concerning which the Florida court had seen fit to make determinations contrary to particular provisions of the separation agreement; and (2) Maine courts will give faith and credit to the Florida judgment at least to the extent that in the present situation in which a Maine court has been called upon to act upon the Florida judgment defendant will be denied the right to assert as binding

---

**3.** We emphasize that we are here confined to issues precipitated by the counterclaim alone.

upon his wife those particular provisions of their 1965 separation agreement which, precisely for the purposes here involved, the Florida judgment has adjudicated to be ineffectual between them.

### Legal Fees.

We dispose summarily of the contentions concerning attorney fees. Unlike the question of alimony, the issue of legal fees does not, in the end, involve the 1965 separation agreement.

■ The September 1971 judgment of the Florida court for alimony arrears and legal fees makes clear that the Florida court imposed upon Mr. Lindsley a direct obligation to the attorneys of plaintiff rather than a debt to Mrs. Lindsley. The indebtedness for legal fees was thus Mr. Lindsley's own debt, not the debt of his wife. The 1965 separation agreement imposed no obligation upon Mrs. Lindsley to indemnify her husband for the services of attorneys rendered in her behalf but for which her husband, not she, was indebted.

### Alimony.

As above noted, the Florida judgment of divorce awarded Mrs. Lindsley $125 per week alimony whereas the 1965 separation agreement, urged upon the Florida court by Mr. Lindsley, provided that the husband pay only $75 per week.

In the matter of alimony on judgment of divorce, Florida courts are governed generally by Fla.Stat.Ann. § 61.08 which empowers them to consider "any factor necessary to do equity and justice between the parties." [4] Where a spouse seeks modification of a previous judicial award of alimony or, as here, an initial adjudication of alimony in excess of amounts agreed upon as support, or alimony, in a separation agreement, the Florida courts are governed specifically by Fla.Stat.Ann. § 61.14. Section 61.14 provides as here material:

> "(1) When the parties have entered into . . . an agreement for payments for, or instead of, support, maintenance, or alimony . . . and the circumstances or the financial ability of either party has changed . . ., either party may apply to the circuit court . . . for a judgment decreasing or increasing the amount of support, maintenance, or alimony, and the court has jurisdiction to make orders as equity requires, with due regard to the changed circumstances or the financial ability of the parties . . ., decreasing, increasing, or confirming the amount of separate support, maintenance, or alimony provided for in the agreement . . .."

Thus, to effectuate the public policy of the State of Florida [5] the Florida legislature has unequivocally authorized the Florida judiciary to deem ineffectual as against the powers reposed in the court the provisions of pre-existing support, maintenance or alimony agreements. Defendant does not contest this conclusion. Instead, he asks us to read into § 61.14 a limitation that the

4. In one aspect, it is defendant's argument that the problem here is one of choice of law and that the appropriate law is that of New York, the State where the 1965 agreement was signed. Under New York law the 1965 agreement could be modified to allow Mrs. Lindsley a higher amount of alimony *only* if she could *show it necessary to her "basic requirements."* *McMains v. McMains,* 15 N.Y.2d 283, 258 N.Y. S.2d 93, 206 N.E.2d 185 (1965). Under Florida law, as developed infra, she need show only changed circumstances justifying modification upwards.

We discern no merit in Mr. Lindsley's characterization of the inquiry here as one of whose law to apply. Rather, the case addresses the power of the Florida court in the divorce action before it. We find nothing in the 1965 separation agreement which purports to limit the power of courts outside New York in this regard, and Mr. Lindsley cites no New York authority for the proposition that New York would encourage its citizens so to limit foreign courts. Indeed, New York law appears to recognize the powers of Florida divorce courts, *In re Nichols' Estate,* 201 Misc. 922, 107 N.Y.S.2d 311, 314 (1951).

5. In fact, subsection (3) of § 61.14 expressly cites this legislative purpose:

> "(3) This section is declaratory of existing public policy and of laws of this state which are hereby confirmed in accordance with the provisions hereof. *It is the duty of the . . court to construe liberally the provisions* hereof to effect the purpose hereof."

modification power thereby conferred be applied only to "Florida agreements."[6]

We read § 61.14 otherwise.

First, § 61.14 on its face contains no hint of the limitation defendant would impose. The statute does contain, however, internal indicia as to its import. In subsection (3) the statute directs courts interpreting § 61.-14 "to construe liberally the provisions hereof to effect the purposes hereof."

We find the purposes of § 61.14 not served by the across-the-board distinction here urged by Mr. Lindsley. We conceive the purposes to be those generally associated with the equitable and domestic relations doctrines of any State. Such considerations concern the needs and obligations of present domiciliaries of a State, *Morgan v. Ande,* Fla.App., 313 So.2d 86 (1975); *Lang v. Lang,* Fla.App., 252 So.2d 809 (1971), regardless of the geographic origin of prior agreements or orders. Moreover, we hesitate to introduce such geographic distinctions given the problem of defining them and the total absence in § 61.14 of any legislative effort to do so. See: n. 6, supra.

Second, while we have discovered no express precedent, the many Florida cases dealing with actions commenced under § 61.14 and its predecessors reveal no distinction between Florida and non-Florida agreements or orders.

In *Cordrey v. Cordrey,* Fla.App., 206 So.2d 234 (1968); appeal dismissed, Fla., 214 So.2d 617 (1968); appeal dismissed and cert. den., 393 U.S. 527, 89 S.Ct. 866, 21 L.Ed.2d 752 (1969), the court entertained a modification action involving (1) a separation agreement executed in Ohio by parties with no Florida connection whatsoever, and (2) a subsequent divorce decree of a Pennsylvania court. Despite the "non-Florida" origins of the agreement and the decree, the Florida court expressed no doubt of the applicability of § 61.14 to both. See also:

*Norton v. Norton,* 131 Fla. 219, 179 So. 414 (1938); *Lang v. Lang,* supra. Further, the statute has been available to defendants as well as to those initiating suit. *Cordrey v. Cordrey,* supra.

Third, we note that we are free to resolve any doubts we may have about the content of Florida law by resort to our own law where, as here, the parties have not offered clear precedent. *Strout v. Burgess,* 144 Me. 263, 278, 68 A.2d 241 (1949). While we believe we have delineated the scope of § 61.14 as a Florida court would, we add that we would so interpret a Maine equivalent of § 61.14.

■ We therefore conclude that under the Florida law the Circuit Court of Florida had the power, as an incident of its jurisdiction of the divorce proceeding instituted by Mr. Lindsley, to adjudicate as ineffectual between Mr. & Mrs. Lindsley those provisions of their separation agreement which were in contradiction of the Court's judgment of the amount of alimony to be paid by Mr. Lindsley.

■ Mr. Lindsley argues that under this interpretation § 61.14 must be deemed unconstitutional as applied to the 1965 agreement in that it impairs an obligation of contract in violation of Art. I § 10 of the Constitution of the United States. In his view, a "Florida contract" would not be so impaired because such contracts contain an implied condition allowing judicial modification pursuant to § 61.14. See: *Lang v. Lang,* supra at p. 811.

This constitutional attack is without merit.

■ In our view *any* separation agreement must be deemed to contain an implied condition that the parties are not attempting to deprive a court of powers legitimately[7] reposing in it, especially when, as here, the agreement contains no express lan-

6. Because we reject this contention, we do not explore the factors which might distinguish a "Florida agreement."

7. Mr. Lindsley has manifested his acceptance of the legitimacy of the public policy promoted

by judicial modification of contractual alimony due to changed circumstances by conceding the legitimacy of the public policy underlying § 61.-14 as applied to Florida contracts.

guage to the contrary. See: *Lang v. Lang,* supra; *Watson v. State Commissioner of Banking,* Me., 223 A.2d 834, 838 (1966), appeal dismissed 389 U.S. 9, 88 S.Ct. 85, 19 L.Ed.2d 9 (1967). Nor is this a case attempting to apply a newly enacted statute lessening contract value to a contract in existence before enactment. See, e. g., *Portland Savings Bank v. Landry,* Me., 372 A.2d 573 (1977). While courts have occasionally noted the inhibitions of Art. I § 10 of the Constitution of the United States in relation to nuptial agreements, they have also recognized that parties to such agreements cannot in the first instance divest the judiciary of power to superintend payment of alimony and child support. *Irwin v. Irwin,* 150 Colo. 261, 372 P.2d 440, 442 (1962); *Richey v. Richey,* Ky., 389 S.W.2d 914, 919 (1965).

■ Having determined the power of the Florida court, we proceed to assess the extent of the Florida court's exercise of its power. Mr. Lindsley maintains the silence of the Florida decree on the issue of the status of the 1965 agreement should be interpreted as manifesting the court's determination to make no decision in regard to the effectiveness between the parties of its support and alimony provisions. His position is untenable.

The parties agree that the issue of the agreement was extensively litigated before the divorce court. Florida law required the court to consider the agreement because representative of the parties' will. *Bare v. Bare,* Fla.App., 120 So.2d 186 (1960); *Nixon v. Nixon,* Fla.App., 200 So.2d 263 (1967). Florida law also empowered the court to deem ineffectual between the parties, for particular purposes, the alimony provisions of the agreement at the request of either party, given changed circumstances. Fla. Stat.Ann. § 61.14; *Cordrey v. Cordrey,* supra. The Florida court, therefore, had really only two options:—(1) to approve the 1965 agreement as an equitable arrange-

ment between the parties in 1971, or (2) to deem the alimony provisions of the agreement ineffectual as between the parties, for the purposes of an award of alimony in the divorce proceeding, in light of developments occurring between 1965 and 1971. The Florida court was not free to ignore the 1965 agreement altogether. *Bare v. Bare,* supra.

Common sense allows but one rational conclusion as to which of the two options the Florida court chose. Since the decree awarded $125 a week alimony in the face of a $75 provision in the separation agreement, by implication it deemed the provision ineffectual between the parties in relation to an award of alimony as an incident of a divorce.[8] We shall not attribute to the Florida court, in the absence, as here, of an express indication thereof, action so unrealistic and futile as ordering a husband to pay alimony of $125 per week while simultaneously anticipating that the wife, pursuant to contract, is obliged to repay $50 of each such weekly payment.

The highest court of Florida has indicated, albeit by way of dictum, that a judgment changing alimony payments but silent as to its effect on the prior agreement will be read as rendering that agreement ineffectual between the parties, to achieve realistically effective force for a judicial award of alimony. *Spencer v. Spencer,* Fla.App., 242 So.2d 786 (1970). At least one court has so held. *Sasmore v. Mois,* 154 A.2d 126 (D.C.Mun.App.1959). Others have achieved the same effect by evolving a rule that where agreement and decree are inconsistent, the decree controls. See, e. g., *Wiggin v. Wiggin,* 223 Ga. 63, 153 S.E.2d 306 (1967).

Finally, assuming arguendo that the Florida law is unclear, we again note our authority to resort to Maine law. *Strout v. Burgess,* supra. Were the inconsistency here to present a wholly domestic question, we would find the court's judgment control-

---

**8.** Section 61.14(2) makes clear that newly ordered amounts replace, rather than supplement or leave intact, the amounts modified:

"(2) When an order is modified pursuant to subsection (1), the party having an obliga-

tion to pay shall pay only the amount of support, maintenance, or alimony directed in the new order, and the agreement or earlier order is modified accordingly."

ling and determinative of the issue concerning the 1965 agreement. See: *Lausier v. Lausier,* 123 Me. 530, 124 A. 582 (1924); *Plummer v. Plummer,* 137 Me. 39, 14 A.2d 705 (1940); *Coe v. Coe,* 145 Me. 71, 71 A.2d 514 (1950). Cf. *Doherty v. Russell,* 116 Me. 269, 101 A. 305 (1917).[9]

Plaintiffs were correctly awarded summary judgment in their favor on count one of defendant's counterclaim.

The entry is:

*Appeal denied.*

All Justices concurring.

---

**9.** We do not read *Carey v. Mackey,* 82 Me. 516, 20 A. 84 (1890) as inconsistent with our analysis here.

In *Carey* this Court interpreted a silent Florida divorce decree as leaving intact a previous separation agreement. Several factors, however, diminish the relevance of *Carey* for present purposes. First, while the Court held the agreement untouched by the Florida decree, it modified the agreement itself by crediting amounts paid under the decree to amounts due under the contract. Second, Florida apparently did not then recognize separation agreements as valid, so the Florida divorce court could not have modified what was to it an illegal contract. Third, for the same reason there was no Florida statutory equivalent of § 61.14 to clarify the issues raised in *Carey.* Fourth, it could be argued that the lump sum awarded by the decree was not inconsistent with the contractual provision of periodic payments.