OLIVER GRANT

*vs.*

ELIOT AND KITTERY MUTUAL FIRE INSURANCE COMPANY.

York.    Opinion May 23, 1883.

*Will.    Fire insurance.    Alienation.    Assignment.*

A testator, who resided and died in New Hampshire, by the first and second items of his will gave large legacies to his children and grandchildren; by the third he gave a like legacy to his wife, and also "the use and income of all my real and personal estate after the before mentioned legacies, and my just debts are paid for, and during the term of her natural life, with all the power to alter, repair, let and relet said real estate, which I, myself, have. I also give her full power to sell and convey, by deed or otherwise, any or all of my said real estate, by the approval in writing of a majority of my said children living at the time of such sale. I also give her full liberty and power to give, bequeath and devise any or all of my said estate during her lifetime, or by will at her death to such of my children or grandchildren as she may choose." By the fourth item he ordered all the foregoing legacies to be paid within a certain time after his decease, and "lastly, as to all the rest, residue and remainder of my estate, real, personal and mixed, wherever found and however situated, I give, bequeath and devise unto my said beloved wife, Ruth Roberts, her heirs and assigns forever," and his wife was made executrix. *Held:*

1. That Ruth Roberts took a fee in all his real estate remaining after the payment of debts and legacies, and had unlimited and unquestioned power to convey the same.

2. That her deed of real estate in this state conveyed a good title, though the will was not proved in this state until after such conveyance, and though she described herself as heir at law in the deed, as she must be deemed to have acted in the capacity which would make it effective.

The true construction of a provision in the charter of a fire insurance company, that in case the property "be alienated by sale, or otherwise, the policy shall thereupon be void," but may be ratified and confirmed to him on application to the directors within thirty days, is, that an alienation makes the policy not void but voidable at the election of the company.

If the company choose to waive their right to avoid it, and agree that it shall be good in the hands of the assignee, it becomes in substance a new and binding contract with him on the basis of the old one for the remainder of

the term. And the assignee accepting it from a mutual company becomes a member thereof, and is liable for the assessments on the premium note, and may maintain an action on the policy in case of loss.

When an assignment of an insurance policy has once received the assent of the directors, fairly procured, they cannot withdraw it against the will of the assignee.

The existence of equitable incumbrances upon the property does not affect the insurance.

ON REPORT.

Assumpsit on a policy of fire insurance, covering two thousand dollars, on certain farm buildings of the plaintiff, which were destroyed by fire.

The writ was dated March 8, 1880.

The opinion states the facts. The following is section six of the charter of the defendant company, which receives a construction in the opinion :

" Section 6. Whenever said company shall make insurance on any building, such building, the land under the same, and appurtenances thereof, shall be holden as security for such deposit money and assessments, as the person thus insured shall be liable to pay, and the policy of insurance shall, from the time it issues, create a lien on said buildings and land therefor, which shall continue, notwithstanding any transfer of the property ; when any property insured by said company, shall be alienated by sale or otherwise, the policy shall thereupon be void, and shall be surrendered to the secretary of said company to be cancelled, and upon such surrender, the insured shall be entitled to receive his deposit note, upon payment of his proportion of all losses and expenses that have occurred prior to such surrender. But any grantee having the policy assigned to him, may have the same ratified and confirmed to him, for his own proper use and benefit, upon application to the directors within thirty days next after such alienation, on giving proper security to the satisfaction of the directors for such proportion of the deposit or premium note as shall remain unpaid, and by such ratification and confirmation, the party obtaining the same shall be entitled to all the rights and privileges, and subject to all the liabilities to which the original party insured was entitled and subject in this act."

*William J. Copeland,* for the plaintiff, cited: *Fogg* v. *Middlesex M. F. Ins. Co.* 10 Cush. 346; *Phillips* v. *Merrimack M. F. Ins. Co.* 10 Cush. 350; *Fuller* v. *Boston M. F. Ins. Co.* 4 Met. 208; *Barrett* v. *Union M. F. Ins. Co.* 7 Cush. 181; *Wilson* v. *Hill,* 3 Met. 66; May on Insurance, 464; *Cummings* v. *Cheshire County M. F. Ins. Co.* 55 N. H. 457; *Stimpson* v. *Monmouth M. F. Ins. Co.* 47 Maine, 379; *Barnes* v. *Company,* 45 N. H. 21; *Ill. M. F. Ins. Co.* v. *Fox,* 53 Ill. 151; *Hale* v. *Union Ins. Co.* 32 N. H. 295; *Behler* v. *German Mut. Ins. Co.* 68 Ind. 347; Angell on Insurance, 142, 143; *Bragdon* v. *Appleton Mut. F. Ins. Co.* 42 Maine, 262; *Durar* v. *Hudson County Ins. Co.* 4 Zab. (N. J.) 171; See 1 Hill (N. Y.) 71; *Cumings* v. *Hildreth,* 117 Mass. 309; Stat. 1874, c. 235; R. S., c. 49, §§ 23, 21, 19; *Brown* v. *Williams,* 28 Maine, 254; *Newhall* v. *Union Mut. F. Ins. Co.* 52 Maine, 182; *Appeal,* 36 Penn. St. 120; *Sheafe* v. *Cushing,* 17 N. H. 509; *Van Nostrand* v. *Moore,* 52 N. Y. 12; May on Insurance, § 385; *Cumberland Valley Mut. F. Ins. Co.* v. *Mitchell,* 48 Penn. St. 374; *Emery* v. *Piscataqua F. & M. Ins. Co.* 52 Maine, 322; *Bellatty* v. *Thomaston Ins. Co.* 61 Maine, 414; *Bartlett* v. *Union Mut. F. Ins. Co.* 46 Maine, 500; *Lewis* v. *Monmouth Ins. Co.* 52 Maine, 492; *Walker* v. *Metropolitan Ins. Co.* 56 Maine, 371; *Bailey* v. *Hope Ins. Co.* 56 Maine, 474; *Patterson* v. *Triumph Ins. Co.* 64 Maine, 500.

*R. P. Tapley,* for the defendants.

The assignments of Ruth Roberts and Mark A. Libby were invalid, being of a void policy, and the consent thereto, by the directors, did not revive it. They were not authorized so to do. *Eastman* v. *Carrol Co. M. F. Ins. Co.* 45 Maine, 307; *Merrill* v. *Farmers' & Mechanics' M. F. Ins. Co.* 48 Maine, 285.

Prior to the loss, the plaintiff was notified that the action of the directors was had under a mistake of fact, and he was asked to return the policy.

The right to transfer under the will was limited to the consent of the heirs, and there is no evidence of that. *Stevens* v. *Winship,* 1 Pick. 318, 327. Touching the construction of the

will, see *Ide* v. *Ide*, 5 Mass. 500 ; *Larned* v. *Bridge*, 17 Pick. 339 ; *Harris* v. *Knapp*, 21 Pick. 412 ; *Gleason* v. *Fayerweather*, 4 Gray, 348 ; *Ramsdell* v. *Ramsdell*, 21 Maine, 288.

The will was inoperative here, as a conveyance of real estate, until approved here.

BARROWS, J. The defendants issued a policy of insurance, dated February 23, 1874, for the term of six years, to Hiram R. Roberts, of Rollinsford, New Hampshire, who was then the owner of the premises insured, which were situated in Berwick, in this county. Roberts died in 1876. He left a will which was duly probated in New Hampshire, and since the commencement of this suit has been admitted to probate in this county also. In that will he made his wife, Ruth Roberts, sole executrix, and by the first and second items gave large legacies to his children, and grandchildren ; by the third, like legacies to his wife, and also " the use and income of all my real and personal estate, after the before mentioned legacies and my just debts are paid for, and during the term of her natural life, with all the power to alter, repair, let and relet said real estate which I myself have. I also give her full power to sell and convey by deed or otherwise, any or all of my said real estate, by the approval in writing of a majority of my said children living at the time of such sale. I do also give her full liberty and power to give, bequeath and devise any or all of my said estate during her lifetime or by will at her death, to such of my children or grandchildren as she may choose."

By the fourth item, he ordered all the foregoing legacies to be paid within a certain time after his decease, and "Lastly ;—As to all the rest, residue and remainder of my estate, real, personal, and mixed, wherever found and however situated," it was "given, bequeathed and devised" to his "beloved wife, Ruth Roberts, her heirs and assigns forever."

April 20, 1877, the same Ruth Roberts conveyed all her right, title and interest in the premises to Mark A. Libby, describing herself in the deed as heir at law, and widow of H. R. Roberts, deceased, and on the same day by a written assignment, subscribed Ruth Roberts, "heir at law of H. R. Roberts, deceased," she

made over to said Libby the policy issued to Hiram R. Roberts, and the directors of the defendant company endorsed their consent to the assignment.

March 27, 1878, Mark A. Libby, receiving three hundred dollars in cash, gave a bond for a deed of the premises to Charles F. Higgins, conditioned upon the payment of eighteen hundred dollars by Higgins on the fifteenth of April, *prox.* And on the first of April, by Higgins' consent, and in his presence, Libby conveyed to the plaintiff, Higgins surrendering his bond and paying him two hundred dollars, and the plaintiff paying the balance, sixteen hundred dollars, and giving Higgins his own bond for a deed of the same, conditioned on the payment of sixteen hundred dollars upon long time. On the same day Libby assigned the policy to the plaintiff, and on the tenth day of April the directors of the defendant company endorsed thereon their consent to the assignment; but on the twenty-ninth of April, 1878, instructed their secretary to request the plaintiff to return the policy as they had assented to the assignment under the mistaken supposition that he was the owner of the property. The secretary did so. To which the plaintiff replied that he had a warranty deed of it, and there the matter rested. The buildings were burned in March, 1879, and due proof of the loss was made. The defendants deny their liability because they say they are a mutual insurance company, capable of contracting only in the manner prescribed by their charter — that no action is maintainable upon this policy by the plaintiff, unless the interest of Hiram R. Roberts in it has been regularly transferred to him, and the consent of the directors obtained before the policy became void — that there has been no such transfer, because the policy became void by alienation of the property upon the death of Hiram R. Roberts, without assignment of the policy and consent of the directors obtained within thirty days, according to the express provisions of section six of the charter, and that no consent of the directors could afterwards revive it.

In the ingenious argument of defendants' counsel much stress was laid upon the proposition that, unless Ruth Roberts took a good title to the property under the will of the party originally

insured, the plaintiff who claims under her deed has no title at all — that if she did take such a title it was an alienation which totally avoided the policy — that after the expiration of thirty days from such alienation, no subsequent assent of the directors to the transfer could make a valid contract of insurance with the plaintiff. Touching these matters we think that although Hiram R. Roberts seems to have been inclined at first to limit his wife's power to dispose of his real estate in the manner indicated in the third item of his will, his final disposition in the last item in favor of her, "her heirs and assigns forever" of "all the rest, residue and remainder of his property, real, personal and mixed," must be regarded as controlling what had gone before, and as giving her absolute power to convey, not only a life-estate, but the fee at her pleasure. We think the plaintiff's title through her deed is well derived, and that it is not defeated by the fact that at the time of her conveyance to Libby the will had not been admitted to probate in this state. If, according to the records, the heirs of Hiram R. Roberts were the apparent owners at the date of that deed, his widow, the devisee, was not the less the real owner, although the means of establishing her title were then wanting.

These have since been supplied, and there was no conveyance by the heirs in the interim so that the deficiency in the probate records then existing, creates no embarrassment in the record title, and the will when approved made the title of the devisee and her assigns good from the death of the testator.

Was this succession of the devisee to the party originally insured an alienation which *ipso facto*, avoided the policy in thirty days after the death of the testator in the absence of any assent of the directors obtained within that time?

It was well held in *Burbank* v. *Rockingham Ins. Co.* 24 N. H. 550, that a descent to the heirs of an intestate insured, is not within the clause against alienation, the same being an involuntary transfer by operation of law. But the court there, *arguendo*, made a distinction between heirs and devisees. Yet the same reasons which in the judgment of the courts suffice to relieve the heirs from a forfeiture under the alienation clause, will generally

apply in the case of devisees. And if it were necessary to decide the question here, we should strongly incline to hold that the death of a testator holding a valid policy of insurance for an unexpired term, would not constitute such an alienation as would avoid the policy, and prevent his executor from maintaining an action for the benefit of the devisee in case of loss within the term.

The death of the testator, through which alone the devisee acquires any title would seem to be, properly speaking, no more an alienation in his case than the death of an intestate. In both the title devolves by operation of law upon those who become, by means of his death his representatives in the title; and the general doctrine of the law seems to be as stated in 2 Am. Leading Cases, 841, thus; " When a building which has been insured by the owner, is destroyed by fire after his death, the right of action for the loss vests in his personal representative in trust, for the heirs, devisees, creditors and other persons claiming under him." *Wyman* v. *Prosser*, 36 Barb. 368; *Wyman* v. *Wyman*, 26 N. Y. 253. See also in this connection *Farmers' M. F. Ins. Co.* v. *Graybill*, 74 Penn. St. 17.

But we deem it unnecessary to decide upon this point, for we think that an alienation, though not followed by an assignment of the policy and assent of the directors procured within thirty days, will not preclude the directors from subsequently assenting so as to make a valid and binding contract with an assignee who is the owner of the premises. In other ·words, that the true significance and effect of the provision in section six of the act of incorporation, touching the effect of an alienation by the insured, is to make the policy not *void*, but *voidable*, at the pleasure of the insurance company, and that an assent of the directors to the transfer of the policy obtained in good faith at any time, during the term named in the policy, will make it good in the hands of the assignee, owning the property, for the remainder of the term. Instances in which the words, void and voidable are used indifferently, both by law writers and law makers, are sufficiently numerous to make this construction feasible whenever the context seems to require it. It is obviously so here.

If the policy absolutely and literally became *void* by means of an alienation, it could no more be revived by an assent of directors, within thirty days than after the lapse of a longer period. That which is null is incapable of restoration; but that which is only liable to become so may receive new life; and if we read, voidable instead of void the binding force of the contract is only suspended at the option of the company in whose favor the provision is made, and it is competent for them to waive the provision in their favor at such time as they please, and to enter into what is in substance, after all, a new contract with the assignee of the policy on the basis of the old one. When they do this the plainest principles of law, good faith, and fair dealing forbid them to recede. The cases of *Eastman* v. *Carroll Co. M. F. Ins. Co.* 45 Maine, 307, and *Merrill* v. *Farmers' & Mechanics' M. F. Ins. Co.* 48 Maine, 285, cited for defendants, exhibit an essential difference from the case at bar. In them the party to whom the policy originally issued made misrepresentations as to the title, and was not the owner of the premises insured, and the assent to the assignment was given in ignorance of this essential fact. In the case at bar the policy issued to the owner, and was assigned by his executrix and devisee, when she conveyed the property, and this assignment was assented to by the directors of the company.

There is nothing to indicate that they acted in ignorance of any fact which it was important for them to know. Whether Ruth Roberts was heir at law of Hiram R. Roberts was of no consequence so long as she was his legal representative and the owner of the premises. She had power to convey the premises and to assign the policy, and the erroneous description of herself as heir at law, does not affect the validity of her act. It was not the design of the provision in § 6, to restrict the power of the insurance company to make insurance in any manner known to the law. Its true constructiom is simply to give them the privilege, if they see fit to exercise it, to regard and treat the policy as void upon an alienation of the property whenever they do not choose to contract with the purchaser for the remainder of the term. The policy is voidable at their election; but when that election has been made—when they have sub-

stantially entered into a new engagement with the purchaser of the property, (the consideration of which is their own release from a liability to lose or refund the proportional part of the premium for the unexpired portion of the term) the provision in the charter was not designed and must not be construed to enable them to avoid the liability to the assignees which they have fairly assumed. See *Pierce* v. *Ins. Co.* 50 N. H. 297, 301; *Barnes* v. *Union M. F. Ins. Co.* 45 N. H., 21; *Hale* v. *Ins. Co.* 32 N. H. 295; *Cumings* v. *Cheshire Co. M. F. Ins. Co.* 55 N. H. 457.

The defendants were paid for insuring a given sum to Hiram R. Roberts for a fixed term, and their contract was to pay to his assigns. By consenting to the assignment made by his executrix and devisee to her grantee, Libby, they agreed that Libby might be substituted, and that the policy should represent to him just what it had to the party originally insured. The same thing was done when Libby conveyed the property and assigned the policy to the plaintiff, and we find nothing in the case reported, to invalidate the transaction in any of its parts. The plaintiff became a member of the company; (*Stimpson* v. *Monmouth M. F. Ins. Co.* 47 Maine, 379,) and liable for all assessments upon the premium note which defendants held, if he did not give a new one. *Cumings* v. *Hildreth*, 117 Mass. 309. No element of a valid and binding contract between the plaintiff and the defendants seems to be wanting.

The contract once fairly entered into, the defendants could not withdraw from it without the consent of the insured, as they appear to have wished to do, upon the mistaken idea that the plaintiff was not the owner of the premises.

His title was good and the bond to Higgins did not affect it or the contract of insurance. *Brown* v. *Williams*, 28 Maine, 254; *Newhall* v. *Union M. F. Ins. Co.* 52 Maine, 182.

In accordance with the stipulations upon which the case was reported,

*Action to stand for trial.*

APPLETON, C. J., DANFORTH, VIRGIN, PETERS and SYMONDS, JJ., concurred.