THOMAS E. GETCHELL

*vs.*

THE MERCANTILE AND MANUFACTURER'S MUTUAL FIRE INSURANCE COMPANY.

Somerset.    Opinion July 1, 1912.

*Contract. Equitable Interest. Indemnity. Insurable Interest. Interest. Tenant. Wagering Contract. Statute of Frauds.*

1. A contract of insurance is a contract of indemnity, the object being to reimburse the insured for his actual loss, not exceeding an agreed sum.

2. The plaintiff had contract with the owner of the property insured for a tenancy to continue during the owner's life, a specific term, and his rights are superior to the rights of ordinary tenants of will.

3. He was interested, pecuniarily and directly, in the preservation of the property and its destruction meant to him a personal financial loss.

4. The plaintiff had such an insurable interest in the property as permitted him to effect the insurance and to recover in case of loss.

5. If the relation between the insured and the property insured was such that injury to it will be a direct and actual loss to him, he had an insurable interest in the property insured.

On report.  Judgment for plaintiff.

Assumpsit on a policy of fire insurance to recover for a loss. Plea, the general issue.  At the conclusion of the evidence the case was reported to the Law Court for determination.

The case is stated in the opinion.

*Manson & Coolidge,* for plaintiff.

*W. G. Chapman,* for defendant.

SITTING:  WHITEHOUSE, C. J., SPEAR, CORNISH, BIRD, HALEY, HANSON, JJ.

CORNISH, J.   On February 22, 1910, the defendant issued its policy of fire insurance insuring the plaintiff for one year to the amount of one thousand dollars on a two story, frame building and additions thereto, etc., situated at Pittsfield Village, Maine, the plaintiff paying a premium of three dollars and giving his premium note for the further sum of eighty-five dollars.  The premises were destroyed by fire on January 9, 1911.  The case is before this court on report.

The defendant introduced no evidence, but the following facts are fairly proved by the evidence introduced by the plaintiff.  The plaintiff's mother, Amanda R. Brown was the owner of the building at the time of the fire and had been the owner for a period of fifteen years prior thereto.  She had placed insurance upon the building in her own name to the amount of two thousand dollars and received eighteen hundred dollars in settlement of her loss after the fire.

The building was occupied by three tenants, the plaintiff occupying the street floor for a hardware store with rooms in the rear for storage purposes, and the other tenants occupying respectively the basement and the tenement in the second story.

About fifteen years ago, the plaintiff's mother was anxious for him to have a business of his own and agreed orally with the plaintiff to let him have this store 65 by 30, with two back rooms, at a rental of fifteen dollars per month, as long as she should live. Acting under that agreement the plaintiff entered into possession of the premises and has occupied them ever since; he has made improvements, rearranging the back rooms, changing the shelving

and putting an ell on the back side of the building, at a total cost of one thousand dollars or more. A fair rental value of the premises at the time the insurance was placed and also at the time of the fire was thirty dollars per month. It further appears that the President of the defendant company, who solicited this insurance, fully understood that the title to the premises was in the plaintiff's mother and what the plaintiff's interest actually was; that the plaintiff's application stated these facts although its precise terms are not in evidence because it was not produced by the defendant although it was filed with the Company when the policy was issued and is referred to by the Secretary of the Company in a letter written to the plaintiff after the fire in which he says: "Upon looking up your letter and application, I find that the building you occupy is owned by Mrs. Brown, who you state is your mother and that the amount placed in our Company was simply to take care of any interest which you might have." There is no claim of fraud or false representation in the procurement of the policy by the plaintiff, or in his application.

The plaintiff therefore claims that under the facts as stated above, he had a pecuniary interest in the preservation of the property, to the amount of one hundred and eighty dollars a year during the life of his mother, that being the annual difference between the rent charged under the agreement, fifteen dollars per month and the fair rental value of the premises, thirty dollars per month; that this was an insurable interest, that the defendant insured it, and should now respond in damages to the amount of his pecuniary loss.

The defendant on the other hand contends that the plaintiff's testimony as to the agreement with his mother is uncertain, unsatisfactory and in a measure self-contradictory, and that he was at most a mere tenant at will with no other or greater rights than the other tenants in the same building or than tenants at will generally, and that he had no such interest as the law regards as insurable.

It is true that the plaintiff varies somewhat as to the terms of the agreement with his mother but the fair conclusion from his testimony as a whole is, we think, as stated above. Assuming his statement to be true, did he have an insurable interest at the time when the policy was taken and also when the fire occurred?

The term "insurable interest" has been defined in somewhat vary-
ing terms yet with substantially uniform meaning. The scope of
the rule that only an insurable interest can be legally insured, may
be determined in some measure from the reason that created it.
It was this. A contract of insurance is a contract of indemnity,
the object being to reimburse the insured for his actual loss not
exceeding an agreed sum. Wagering policies are forbidden as
against public policy. A should not be allowed to insure for his
own benefit B's property in which A has no concern and by the
loss of which A would not be directly and financially affected. To
hold otherwise would be to increase the moral hazard and to per-
mit one man to profit by the losses of another. The crucial ques-
tion therefore is, will the insured be directly and financially affected
by the loss of the property insured. If so he has such an interest
as the law will recognize. The loss must not be indirect or senti-
mental but direct and actual. It is not necessarily an interest in
the property in the sense of title, but a concern in the preservation
of the property and such a relation to or connection with it as will
necessarily entail a pecuniary loss in case of its injury or destruc-
tion. This opens a wide field and the decisions take an extensive
range with a growing tendency to expand rather than to contract
the scope of the term. It has therefore been held that it is sufficient
if the insured has any legal interest whatever as an owner in fee,
a mortgagee, a tenant for life or a lessee; or an equitable interest,
as a mortgager, even after foreclosure proceedings begun but not
perfected, or a purchaser under a bond for conveyance; or if the
insured has a right derivable out of some contract relating to the
thing insured, of such a nature that the insured may be benefitted
by its preservation and prejudiced by its destruction, as a common
carrier of goods of others in transportation, or a bargainee of goods
who has advanced a portion of the purchase price.

In other words, without attempting to coin a new definition but
reversing the usual order, it may be said that any direct pecuniary
loss negatives the idea of a wagering policy and presupposes an
insurable interest, and an insurable interest can be insured.

We find therefore as we would expect, the term defined in broad
and comprehensive language: "If such a relation exists between
the assured and the property that injury to it will, in natural con-

sequence, be a loss to him, he has an insurable interest therein." *Wilson* v. *Jones*, L. R. 2 Exch., 139: "Any person has an insurable interest in property, by the existence of which he receives a benefit, or by the destruction of which he will suffer a loss, whether he has or has not any title in, or lien upon, or possession of, the property itself." *Eastern R. R. Co.* v. *Ins. Co.*, 98 Mass., 423.

"If a person has such an interest in property that he will suffer pecuniary loss by its destruction, he has an insurable interest." *Wainer* v. *Ins. Co.*, 153 Mass., 335. But no more comprehensive definition has been given than by this court in *Gilman* v. *Ins. Co.*, 81 Maine, 488, where the language is as follows: "It may be stated as a general proposition, sustained by all the authorities, that whenever a person will suffer a loss by a destruction of the property he has an insurable interest therein."

An application of this test brings the interest of the plaintiff in the case at bar clearly within the rule.

This is not the case of an ordinary tenant at will, whose sole interest in the property or in its preservation could not extend beyond the time which would be required to evict him.

But the Supreme Court of Iowa has held that even that interest constitutes a right of possession for a definite term of at least thirty days and is insurable. *Schaeffer* v. *Ins. Co.*, 113 Iowa, 652, 85 N. W., 985.

The rights of the plaintiff in the case at bar, however, are superior to the rights of the ordinary tenant at will. He had made a contract with the owner for a tenancy to continue during the owner's life, a specific term. It is true that the contract was not reduced to writing and was therefore voidable under the Statute of Frauds, but it was not thereby rendered absolutely void and non enforceable. "Parol leases are not void." *Elliott* v. *Stone*, 1 Gray, 571. Having entered into possession under the contract and partly performed it, having with the owner's knowledge made valuable improvements and additions, presumably in consequence of the contract, we are not prepared to say that equity would have left him remediless in case the owner had attempted to evict him. He had in effect paid the difference between the agreed rent of fifteen dollars per month and the fair rental value of thirty dollars per month in advance by the making of the improvements, and he could only be made whole

by a continuation in occupancy during the agreed term. These facts might have furnished ground for equitable interference had occasion required, and the fact that the agreement was oral would not have deprived the plaintiff of his remedy. Specific performance has been successfully invoked under oral contracts voidable under the Statute of Frauds, when part performance has been made. *Ash* v. *Hare,* 73 Maine, 401; *Green* v. *Jones,* 76 Maine, 563; *Woodbury* v. *Gardner,* 77 Maine, 68; *Bigelow* v. *Bigelow,* 95 Maine, 17.

But whatever the plaintiff's remedy may have been had the owner repudiated the contract, the fact remains in this case that she had never done so. She recognized the lease as existing at the time of the fire and the plaintiff as her tenant under it. That tenancy was admittedly of value to the plaintiff. He derived a profit of one hundred and eighty dollars a year under it. His removal to equally good quarters increased his annual rent by that amount. He was interested pecuniarily and directly in the preservation of the property and its destruction meant to him a personal financial loss. The following cases have a bearing upon the propositions involved. *Ins. Co.* v. *Mendenhall,* 164 Ill., 458, 36 L. R. A., 374; *Berry* v. *Ins. Co.,* 132 N. Y., 49, 30 N. E., 254; *Schaeffer* v. *Ins. Co.,* 133 Iowa, 205, 100 N. W., 847; *Welch* v. *Fire Assn.,* 120 Wis., 456, 98 N. W., 227; *Amsinck* v. *Ins. Co.,* 129 *Mass.,* 185.

It is therefore the opinion of the court that the plaintiff had such an insurable interest in the property as permitted him to effect the insurance and to recover in case of loss.

This conclusion is reached in this case with less hesitation because the president of the insurance company was fully informed of the situation when he solicited the insurance and the plaintiff's written application also stated the facts.

With a full knowledge of the plaintiff's relation to the property and of his mother's ownership in fee, the Company issued the policy and received and has since retained the premium and premium note. Under such circumstances it should require unusual reasons to satisfy the Court that the interest insured was not insurable.

The fact that the policy in terms covers the buildings and does not specify the plaintiff's interest is immaterial. The Company knew the facts and independent of that, in the absence of any specific inquiry on the part of the insurers, or express stipulation

in the policy, no particular description of the nature of the insurable interest is necessary. *Gilman* v. *Ins. Co.*, 81 Maine, 488, and cases cited.

The only question remaining is the amount of the plaintiff's loss. The determination of this question is not without difficulty as it is to some extent a matter of estimate, but while this may require a balancing of probabilities, it is not insurmountable. *Doyle* v. *Ins. Co.*, 181 Mass., 139, 144. Similar problems often arise in actions for personal injury. The life tables were introduced in evidence in the case at bar showing that the mother's expectancy of life, her age being seventy-six at the time of the trial, was 5.88 years and at the time of the fire a year before, it was 6.88 years. It was also shown that her health is good and that she comes of a long-lived family on one side at least, her mother living to the age of ninety-three and her maternal grandfather to the age of eighty-three. It would seem, therefore, conservative and just to reckon upon the plaintiff's tenancy continuing for a term of seven years after the date of the fire, and where a lease hold interest is insured, the value of the unexpired term is the measure of loss. *Niblo* v. *Ins. Co.*, 1 Sand., (N. Y.) 551; *Corey* v. *Ins. Co.*, 33 Hun., (N. Y., 315); *May* on Ins., 2nd Ed., p. 648. In *Schaeffer* v. *Ins. Co.*, 133 Iowa, 205, 110 N. W., 470, it was held that the loss to the insured from the destruction of a building which he had a right to occupy during his life was determined by the difference between the reasonable rental value and the rental cost to him for the remainder of the term, such term to be computed from the life tables and other material evidence. Reckoning therefore, on the basis of one hundred and eighty dollars a year for seven years from January 9, 1911, a total of $1260, the loss is approximately determined by taking the present worth of that amount on May 7, 1911, that being sixty days after proof of loss was received by the Company.

The amount so ascertained exceeds slightly the amount of the policy.

Therefore the entry must be,

> *Judgment for the plaintiff*
> *for $1000 and costs.*