FORBES *v.* AMERICAN INTERNATIONAL INSURANCE COMPANY

[No. 74, September Term, 1970.]

*Decided December 16, 1970.*

The cause was argued before BARNES, MCWILLIAMS, FINAN, SINGLEY and SMITH, JJ.

*Thomas P. Smith,* with whom were *Karl G. Feissner, William L. Kaplan, Fred R. Joseph, Andrew E. Greenwald* and *Feissner, Kaplan & Smith* on the brief, for appellant.

*F. Wainwright Barnes* for appellee.

FINAN, J., delivered the opinion of the Court.

We are here presented with the question of whether the appellant, a succeeding life tenant, is entitled to the proceeds of a fire insurance policy where the destroyed improvement had been insured by the preceding life tenant who died prior to the fire, the loss having occurred before the expiration date of the prepaid policy.

One Clarence A. Hall died testate, and his will was probated in the Circuit Court for Prince George's County, Maryland, on April 15, 1957. The second clause of his will contained the following:

> "I hereby give, devise and bequeath to my beloved wife, Alice H. Hall, for her lifetime, my farm located in Charles County, Maryland. Upon the death of my said wife, I hereby give, devise and bequeath said farm to my cousin, Robert Forbes, for his lifetime. Upon the death of said Robert Forbes, I hereby give, devise and be-

queath said farm to his son, Clarence S. Hall Forbes, in fee simple."

During the course of her life tenancy, Alice H. Hall on January 20, 1964, executed an insurance contract with the Fidelity Phoenix Insurance Company of New York whose successor in interest is the American International Insurance Company, appellee, to cover certain buildings and outbuildings on the farm in Charles County. The policy of insurance was to run for a period of five years and the premium charge for the five years was paid in advance. On November 4, 1968, she died and by virtue of her husband's will, Robert Forbes succeeded her as life tenant. On December 18, 1968, approximately one month before the insurance policy would terminate, and 44 days after Forbes became life tenant, the frame metal roof dwelling insured for the sum of six thousand dollars burned to the ground and was a total loss.

At the time the insurance policy was executed, and also at the time of the fire, the dwelling was rented to one Christine E. Queen. The appellee insurer was never informed of the change in interest of the property prior to the fire. Forbes, the appellant and present life tenant, brought an action to collect the proceeds of the insurance. The lower court granted the defendant insurer's motion for summary judgment from which this appeal was taken.

The insurance policy on the subject property contained the following pertinent clauses:

"This company * * * does insure the insured named above [ALICE H. HALL] and legal representatives, to the extent of the actual cash value of the property at the time of the loss * * * nor in any event for more than the interest of the insured * * *."

"Assignment of this policy shall not be valid except with the written consent of this company."

There had been no assignment of this policy by Alice H. Hall during her lifetime.

Alice H. Hall was vested with only a life estate in the insured property which interest expired by operation of law at the moment of her death. The appellant Forbes took a succeeding life estate which was a new and different interest than that held by Alice H. Hall. A contract of insurance is a personal contract. We know of no principle of law, nor have we been favored with any persuasive authority, which would support the proposition that the insurance contract in question should be so broadly construed as to cover the interest of the succeeding life tenant Forbes or vest him with a right to the proceeds of the policy.

The crunch of the appellant's argument is that the preceding life tenant, Alice H. Hall, had an obligation to insure the property to protect both her interest and the interest of the succeeding remaindermen *ergo*, the succeeding life tenant. In support of this contention the appellant cites several text writers, somewhat out of context, and relies on the case of *Clyburn v. Reynolds*, 9 S. E. 973 (S. C. 1889), a case which represents what is recognized by authorities as being distinctly the minority view in this country.[1]

We perceive the majority view to be that expressed by the Virginia Supreme Court of Appeals in the case of *Thompson v. Gearheart*, 119 S. E. 67 (Va. 1923), which is the subject of an annotation in 35 A.L.R. 36, and in which the court with simple clarity recognized the rule that:

> "The life tenant was under no obligation to insure the property for the benefit of the remaindermen. Each of them had an insurable interest

---

1. See also Crisp County Lumber Co. v. Bridges, 200 S. E. 777 (Ga. 1939), annotated in 126 A.L.R. 333, wherein the majority of the court decided that the insurance stood in place of the property destroyed and imposed a duty upon the life tenant to either replace the property or hold the proceeds of insurance in trust for the remainderman, the life tenant being entitled to the income on the proceeds in the interim. The court relied upon a statute (Georgia Code § 37-216) which charged the life tenant with the reasonable "preservation and protection" of the property. Two members of the court joined in a brief but sharp dissent.

in the property, but a policy in the name of one could not cover the interest of the other. The nature and effect of an insurance contract is to indemnify the *insured* against loss or damage, and not someone else who is not a party to the contract; nor has such other party any lawful claim on the amount realized by the assured under the policy." 119 S. E. at 68.

The Court in *Gearheart* also summarily dismissed *Clyburn v. Reynolds, supra,* relied upon by the appellant, with the following comment:

"* * * Under these circumstances [the insured in Clyburn had taken out the policy in his own name as life tenant but shortly before his death had the policy taken out in his own name as executor of his father's estate], the court reaches the conclusion that the life tenant is a trustee for the remainderman, and that a sound public policy requires that any money collected by a life tenant as a total loss by fire should be used in rebuilding or should go to the remainderman. This holding is at variance with the universally accepted doctrine that a contract of insurance is a personal contract, and inures to the benefit of the party with whom it is made, and indemnifies him against loss; and that the amount paid by the company "is in no proper or just sense the proceeds of the property." 119 S. E. at 69.

See also *Blanchard v. Kingston*, 193 N. W. 241 (Mich. 1923) ; *Spalding v. Miller,* 45 S. W. 462 (Ky. 1898) ; *Zehring's Estate,* 4 Pa. Super. Ct. 243 (1897) ; *Harrison v. Pepper,* 44 N. E. 222 (Mass. 1896) ; *Addis v. Addis,* 14 N.Y.S. 657 (1891). There is also to be found a supplemental annotation in 126 A.L.R. 345 which expresses the same general rule in the following language:

"It is clearly the general rule that where a life

tenant insures the property in his own name and for his own benefit and pays the premium from his own funds, he is, at least in the absence of a fiduciary relationship between him and the remainderman existing apart from the nature of and incidents of the tenancy itself, or of an agreement between him and the remainderman as to which of them shall procure and maintain insurance, entitled to the proceeds of the insurance upon a loss; and the fact that the insurance was for the whole value of the fee is not generally regarded as affecting the right of the life tenant to the whole amount of the proceeds, although a contrary view has occasionally been taken." 126 A.L.R. 345.

Counsel for both parties to this appeal state in their briefs that the issue presented by this case is one of first impression in Maryland; however, we think the dictum found in *Legge v. Canty*, 176 Md. 283, 289, 4 A. 2d 465 (1939), shows rather clearly that this Court some years ago manifested a disposition to follow the general rule were the issue to be presented to it. In that case Judge Offutt, writing for the Court, stated:

"* * * Ordinarily, in the case of a life tenancy the life tenant would insure his interest, and the remaindermen would insure their interest * * *." 176 Md. at 289.

The apparent harshness of the result which we reach in this case should be tempered by the consideration that if Mrs. Hall, as life tenant, had neglected to insure the property and the succeeding life tenant Forbes or the remainderman had insured his interest and the property had been destroyed during her lifetime, she would have had no claim against them for the proceeds or any part of it. See *Addis v. Addis, supra,* at 658.

The appellant would also infer that the term "legal representatives," as used in the policy wherein it states,

"This company * * * does insure the insured named above and legal representatives, * * *" is sufficiently broad in concept as to include a succeeding life tenant. We think the ascribing of such a broad scope of meaning to the term "legal representatives" results in a distorted and tortured use of the term. Historically, the term "legal representative" has usually carried the connotation of "executors and administrators." *Black's Law Dictionary,* 4th Ed. defines the term "legal representative" as:

> "The term in its broadest sense, means one who stands in place of, and represents the interest, of another. * * *
> "Primarily and usually the term connotes executors and administrators. * * *"

The definition in *Black's Law Dictionary* further illustrates some expanded uses of the term depending on the context in which it appears, such as, "assignee" and "guardian." See also *Loomis v. Vernon Mutual Fire Insurance Co.,* 111 N.W.2d 443, 444, 445 (Wisc. 1961); *Dyer v. Standard Fire Insurance Co.,* 227 S.W.2d 520, 521 (Mo. 1950); *Thompson v. Smith,* 103 F. 2d 936, 938 (D. C. App. 1939). The term "legal representative" has also been used synonymously with that of "personal representative."

Recently this Court had occasion to give a somewhat broadened interpretation of the term "personal representative," in construing the Maryland Unsatisfied Claim and Judgment Fund Law, Code (1967 Repl. Vol.) Art. 66½, §§ 150-179, in the case of *U.C. & J. Fund v. Hamilton,* 256 Md. 56, 259 A. 2d 303 (1969). In that case Chief Judge Hammond writing for the Court pointed out that the term "personal representative" may be sufficiently broad as to cover *any person who with respect to his property and rights stands in the deceased's place and represents his interest,* whether transferred to him by the act of the deceased or by operation of law." (Emphasis supplied.) The same opinion also calls attention to the fact that the term "legal representative" is usually used

in the same context as "personal representative" and cites *Zeagler v. Commercial Union Ins.*, (D. Ct. of App. 3rd D., Fla.) 166 So. 2d 616 (1964) as construing the term to mean a member of the family entitled to benefits under a wrongful death statute. However, for the purpose of the administration of estates the Maryland Code (1969 Repl. Vol.) Art. 93, § 1-101(n) defines the term "personal representative" as including "an executor or administrator but not a special administrator." (The official comment in the Code pertaining to this section also states that "subsection (n) is intended to require the use of the term 'personal representative' instead of 'executors or administrators.'")

In sum, in the cases we have read and in the examples cited by the authorities there is present either the thread of derivation of interest or authority running from the deceased to the person to whom the term "legal representative" is applied, or the person is actually standing in the deceased's stead. In the instant case none of these elements are present with regard to the appellant. We find nothing in the cases or in the authorities which persuades us that the term "legal representative" should be extended to encompass the succeeding life tenant of a preceding life tenant.

Subsequent to the judgment in the lower court and pending the submission of briefs on appeal, counsel for the appellant informs us that he discovered for the first time what he deems to be a real legal nugget in the language of Code (1968 Repl. Vol.) Art. 48A, § 368, which reads as follows:

> "A change of interest on the death of the insured shall not void an insurance of property, *and insurance shall pass to the person taking the interest of the deceased in the thing insured.*" (Emphasis supplied.)

Unfortunately for the appellant we do not share his belief that in discovering Section 368 he unearthed the "mother lode." The second clause of Section 368 quoted

above, and which we have italicized, contains the answer. We think the clear language of this clause requires that for the continuance of coverage of the insurance contract the person acquiring the property insured must take or represent the deceased insured's interest in the property. In this instance the life estate interest of Alice H. Hall did not pass to Forbes, for her interest was extinguished upon her death. The life estate interest that Forbes takes comes from the original testator and passes to him as the second or succeeding life tenant. We cannot make the situation more clear than has been succinctly stated in 33 Am. Jur., *Life Estates, Remainders, Etc.* Section 47, page 509:

> "The remainderman ultimately succeeds to the possession of the life tenant, but he does not succeed to his title. The remainderman gets title from another and independent source and not by descent from the life tenant; the remainderman takes as a purchaser, and becomes a new stirps of the inheritance. He takes under the will and from the testator, and not as an heir of or successor to the life tenant."

True, in the case at bar, Forbes is not a remainderman but only a life tenant, yet the above quotation from American Jurisprudence may be legitimately paraphrased by stating: *"The succeeding life tenant gets title from another and independent source and not by descent from the preceding life tenant."*

Again, addressing ourselves to the statute we find nothing in the language of Section 368 or in any other parts of Article 48A which would lead us to believe that the Legislature intended any interpretation other than that which may be derived from the clear meaning of its language. The statute was passed as a part of Chapter 553 of the Acts of 1963, and a review of the report of the Legislative Council to the General Assembly on this Bill fails to reveal any accompanying commentary which might place a different gloss on Section 368 than that

which may be extracted from its literal meaning. In such a circumstance the "clear and unambiguous language" of the statute will control. *Equitable v. Insurance Commissioner,* 251 Md. 143, 149, 246 A. 2d 604 (1968) ; *Hunt v. Montgomery County,* 248 Md. 403, 414, 237 A. 2d 35 (1968) ; *Maryland Medical Service v. Carver,* 238 Md. 466, 477-478, 209 A. 2d 582 (1964).

It may well be that the Legislature intended to protect the interest of a succeeding life tenant as well as that of a remainderman in the event of a change of interest on the death of the insured; however, in our opinion the statute fails to so state with sufficient clarity as to justify such an interpretation. The proper forum in which to remedy such an oversight, if indeed an oversight there be, is the Legislature. Unfortunately, in this case, such a curative amendment, with its prospective effect, would be of no assistance in restoring the loss sustained by the succeeding life tenant.

*Judgment affirmed, appellant to pay costs.*