MAINE SUPREME JUDICIAL COURT                                    Reporter of Decisions
Decision:    2018 ME 44
Docket:      Pen-17-325
Argued:      February 14, 2018
Decided:     March 22, 2018

Panel:       SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.

ESTATE OF CARROLL G. FRYE et al.

v.

MMG INSURANCE COMPANY

GORMAN, J.

[¶1] MMG Insurance Company appeals from a summary judgment in favor of Curtis W. Frye, Daryl K. Frye, and the Estate of Carroll G. Frye (collectively, the Estate) entered by the Superior Court (Penobscot County, *Anderson, J.*) on the Estate's action seeking enforcement of a property insurance contract for the loss of a dwelling by fire. MMG contends that the court erred by interpreting Carroll's insurance contract with MMG as providing coverage to the Estate, notwithstanding the Estate's lack of any insurable interest in the property after Carroll's death. We agree with MMG and vacate the judgment.

## I. BACKGROUND

[¶2]  Viewed in the light most favorable to MMG, as the nonprevailing party, the summary judgment record establishes the following undisputed facts.  *See Estate of Mason v. Amica Mut. Ins. Co.*, 2017 ME 58, ¶ 8, 158 A.3d 495.

[¶3]  In 1994, Carroll G. Frye and Thelma Frye executed a deed conveying their residence in Eddington to their sons, Curtis and Daryl, but reserving a life estate in the property for themselves.  Thelma died in 2013.  After Thelma's death, Carroll purchased homeowner's insurance from MMG[1] for the "residence premises" for the period from August 12, 2013, to August 12, 2014.  The policy defined the "insured" as "[y]ou and residents of your household who are . . . [y]our relatives . . . or . . . [o]ther persons under the age of 21 and in the care of any person named above."  Carroll was the only named insured on the policy and the only resident of the property; neither Curtis nor Daryl had lived on the property for decades, and neither was ever added to the policy as a named insured.  The policy also contained a death clause:

**G. Death**

If any person named in the Declarations or the spouse, if a resident of the same household, dies, the following apply:

---

[1] MMG had continuously insured the property since 1946.

1.  We insure the legal representative of the deceased but only with respect to the premises and property of the deceased covered under the policy at the time of death; and

2.  "Insured" includes:

    a.  An "insured" who is a member of your household at the time of your death, but only while a resident of the "residence premises"; and

    b.  With respect to your property, the person having proper temporary custody of the property until appointment and qualification of a legal representative.

[¶4]  Carroll died on January 8, 2014.  Six weeks later, on February 25, 2014, there was a fire on the property.  Curtis and Daryl were appointed personal representatives of the Estate on April 23, 2014.

[¶5]  MMG paid the Estate's claim for loss of personal property from the fire but denied coverage for the dwelling itself.  MMG cancelled the policy on August 12, 2014, and retained the entire premium collected for the 2013 to 2014 policy term.

[¶6] The Estate—through Curtis and Daryl as personal representatives—and Curtis and Daryl as individuals filed a complaint against MMG on December 22, 2015, alleging breach of contract and seeking a declaratory judgment that the loss of the dwelling from the fire is covered by the MMG policy.

4

[¶7]  MMG and the Estate each moved for a summary judgment on both counts.  The court granted the Estate's motion as to both counts and denied MMG's motion.  The court concluded that Curtis and Daryl, as Carroll's only children, qualified as Carroll's "legal representatives" according to the policy's death clause and therefore had the right to enforce the policy.  The court also determined that MMG was estopped from asserting that the Estate lacked sufficient interest in the property to enforce the policy because MMG's conduct misled Carroll regarding the scope of coverage and Carroll justifiably relied on that misleading conduct.  Based on this determination, the court declared that Carroll's policy with MMG covered the loss of the dwelling from the fire that occurred after Carroll's death.  MMG appeals.

## II.  DISCUSSION

[¶8]  MMG challenges the court's entry of a summary judgment in favor of the Estate.  We review the supported facts in the summary judgment record in the light most favorable to MMG, as the nonprevailing party, to determine de novo if any genuine issue of material fact exists for trial and whether, based on the undisputed facts, the Estate was entitled to a judgment as a matter of law.  *See Estate of Mason*, 2017 ME 58, ¶ 8, 158 A.3d 495.  Here, the parties do not dispute the material facts; this appeal depends entirely upon the

application and interpretation of the insurance policy as a matter of law. *See id.* ¶ 9.

[¶9]  Insurance coverage is enforceable when two conditions are met. The first condition is contractual, i.e., the claimed loss must fall within the scope of an executed policy. *Harlor v. Amica Mut. Ins. Co.*, 2016 ME 161, ¶ 7, 150 A.3d 793.

[¶10]  The second condition is statutory.  Pursuant to 24-A M.R.S. § 2406 (2017), insurance coverage is enforceable only when the claimant has an insurable interest in the insured property:

> **1.**  No contract of insurance of property or of any interest in property or arising from property shall be enforceable as to the insurance except for the benefit of persons having an insurable interest in the things insured as at the time of the loss.
>
> **2.**  "Insurable interest" as used in this section means any actual, lawful, and substantial economic interest in the safety or preservation of the subject of the insurance free from loss, destruction, or pecuniary damage or impairment.[2]

The requirement of an insurable interest is central to the purpose of insurance generally, which is to indemnify the insured against his or her own pecuniary loss. *Getchell v. Mercantile & Mfr's Mut. Fire Ins. Co.*, 109 Me. 274, 277-78, 83 A.

---

[2]  The policy here duplicated the substance of 24-A M.R.S. § 2406 (2017) by requiring an insurable interest: "[W]e will not be liable in any one loss . . . [t]o an 'insured' for more than the amount of such 'insured's' interest at the time of loss . . . ."

6

801 (1912) (stating that the requirement of an insurable interest is intended to prevent "[w]agering policies" by which "one man . . . profit[s] by the losses of another"); *Gendron v. Pawtucket Mut. Ins. Co.*, 384 A.2d 694, 696-97 (Me. 1978) ("[T]he question of insurable interest . . . necessarily involves the insured's relationship to the property insured . . . ."); *Harrison v. Pepper*, 44 N.E. 222, 223 (Mass. 1896); 3 Steven Plitt et al., *Couch on Insurance* § 41:1, Westlaw (database updated December 2017).

A.    Coverage Before Carroll's Death

1.    Carroll

[¶11]   There is no dispute that Carroll would have satisfied both conditions if the house had been damaged while he was alive.  He and MMG executed a contract that covered the dwelling in Eddington for the period from August 12, 2013, to August 12, 2014, in which Carroll was the sole insured (both as the named insured and the sole resident of the dwelling).

[¶12]  Carroll also had an insurable interest in the Eddington property that was the subject of the policy.  Pursuant to the 1994 deed, Carroll reserved a life estate in the property when he deeded a remainder interest in the property to Curtis and Daryl (the remaindermen), but retained a possessory interest as a life tenant, allowing him to possess the property until his death.

*See* 33 M.R.S. § 101 (2017) (stating that "an interest which must terminate not later than the death of one or more persons is a 'life estate' even though it may terminate at an earlier time"); *Watson v. Cressey*, 79 Me. 381, 382, 10 A. 59 (1887) (characterizing a life estate as one in which the life tenant has the right to possession and enjoyment of property concurrent with the remainderman's vested estate); *see also LaFlamme v. Hoffman*, 148 Me. 444, 447, 95 A.2d 802 (1953) ("[T]he life estate was to hold during the natural life of the [life tenant]." (quotation marks omitted)); *Ramsdell v. Ramsdell*, 21 Me. 288, 296 (1842) (discussing a life estate as the grant of a right to "use . . . during life").

[¶13] A person need not own property in fee simple to enjoy an insurable interest in that property. *Getchell*, 109 Me. at 277, 83 A. 801; *Hunter v. State Farm Fire & Cas. Co.*, 543 So. 2d 679, 681 (Ala. 1989); 3 Steven Plitt et al., *Couch on Insurance* § 41:1. A life tenant, such as Carroll, has an insurable interest in property by virtue of his record possessory interest. *See Abbott v. Danforth*, 135 Me. 172, 176, 192 A. 544 (1937) ("The life tenant is entitled to the management, possession and control of the estate."); *Converse v. Boston Safe Deposit & Tr. Co.*, 53 N.E.2d 841, 843 (Mass. 1944); *Clinton v. Norfolk Mut. Fire Ins. Co.*, 57 N.E. 998, 999 (Mass. 1900). Thus, during the period from the start date of the contract—August 12, 2013—to Carroll's death—January 8, 2014—

8

Carroll was insured and had an insurable interest, and therefore he could have enforced the contract during that period in the event of a loss. *See* 24-A M.R.S. § 2406.

2.    Curtis and Daryl

[¶14]  While Carroll was alive, Curtis and Daryl also enjoyed an insurable interest in the same property as the remaindermen, even in the absence of any right of possession. *Hunter*, 543 So. 2d at 681; *Watson*, 79 Me. at 382, 10 A. 59 ("[The remainderman's] estate is not postponed till the termination of the life estate. His right of possession or enjoyment is postponed, but his estate, such as it is, vests immediately. In other words, he takes a vested remainder."); 3 Steven Plitt et al., *Couch on Insurance* § 42:46. Although neither the life tenant nor remaindermen have a fee simple absolute interest in the property, each has an independent insurable interest that allows for concurrent coverage because each stands to suffer pecuniary loss during the term of the life estate.[3] *Hunter*, 543 So. 2d at 681; *Gendron*, 384 A.2d at 696-97; *Converse*, 53 N.E.2d at 843; *Harrison*, 44 N.E. at 223; *Thompson v. Gearheart*, 119 S.E. 67, 68 (Va. 1923).

---

[3] This does not create double coverage; the amount of coverage and the compensation owed to each in the event of a loss is calculated based on the value of each interest at the time of the loss. *See Converse v. Boston Safe Deposit & Tr. Co.*, 53 N.E.2d 841, 843 (Mass. 1944); *Harrison v. Pepper*, 44 N.E. 222, 223 (Mass. 1896).

[¶15] Although Curtis and Daryl had an insurable interest while Carroll was alive by virtue of their ownership of a remainder interest, they were not insured by Carroll's policy during this period because they were neither the "named insured" nor otherwise qualified for coverage pursuant to the language of the MMG policy. *See Harrison*, 44 N.E. at 223 ("Each can insure his own interest, but, in the absence of any stipulation or agreement, neither has any claim upon the proceeds of the other's policy . . . ."); *Thompson*, 119 S.E. at 68 ("Each of them had an insurable interest in the property, but a policy in the name of one could not cover the interest of the other."); *see also Jackson v. Jackson*, 201 S.W.2d 218, 220-21 (Ark. 1947); 5 Steven Plitt et al., *Couch on Insurance* § 68:45, Westlaw (database updated December 2017) ("The general rule is that remaindermen have no right or interest in the proceeds of insurance effected by the life tenant.").

B.    Coverage After Carroll's Death

[¶16] The parties dispute what coverage remained upon Carroll's death. It is settled law that when a life tenant dies, the property that is the subject of the life estate does not become part of the deceased's estate because the life tenant's interest in the property does not survive his death. Instead, the remaindermen immediately and automatically acquire all rights to the

property. *Forbes v. Am. Int'l Ins. Co.*, 271 A.2d 684, 685 (Md. 1970) ("[The life tenant] was vested with only a life estate in the insured property which interest expired by operation of law at the moment of her death."); *see* 33 M.R.S. § 101; Rev. Rul. 66-86, 1966-1 C.B. 216, 1966 IRB LEXIS 342; (stating that "no portion" of a decedent's interest in a life estate is "includible in the decedent's gross estate" pursuant to federal tax statutes); *Nelson v. Meade*, 129 Me. 61, 65, 149 A. 626 (1930) (stating that the death of the life tenant "accelerated the estate of the remaindermen who take in fee"); *Doherty v. Russell*, 116 Me. 269, 275, 101 A. 305 (1917) ("[T]he right of action of the remainder-men or reversioner does not accrue until the death of the tenant for life."); *Hooper v. Leavitt*, 109 Me. 70, 72, 76, 82 A. 547 (1912) (holding that a life estate "terminated at the death of the [life tenant]" and that the remaindermen had "no right of entry until the termination of the life estate by its own limitation"); *Webber v. Jones*, 94 Me. 429, 432, 47 A. 903 (1900) (stating that a vested remainderman has "at the death of the testator a present fixed interest to take effect in possession upon the termination of the life estate"); *Cole v. Edgerly*, 48 Me. 108, 112 (1861) (stating that, "upon [the] decease [of the life tenant], all rights under the levy would cease"); Restatement (Third) of Prop.: Wills and Donative Transfers § 24.5 (Am. Law Inst. 2011); Restatement (First) of Prop. § 152 & cmt. a

(Am. Law Inst. 1936). Thus, upon the death of a life tenant, the life tenant's estate has no insurable interest in the property. *Garnett v. Royal Ins. Co.*, 98 S.E. 363, 364 (Ga. Ct. App. 1919); *Thompson*, 119 S.E. at 69; 3 Steven Plitt et al., *Couch on Insurance* § 42:55 ("A life tenant has an insurable interest in the property subject to that estate. The death of the life tenant terminates that insurable interest, however." (footnotes omitted)).

### 1. Carroll's Estate

[¶17] As a matter of law, because Carroll had only a life estate, Carroll's Estate lacked any insurable interest in the real property as of the moment of Carroll's death.[4] Instead, Curtis and Daryl immediately acquired all rights to

---

[4] The Superior Court concluded that it "need not resolve the issue of whether an insurable interest existed at the time of the loss," because it determined that MMG was "estopped from raising such argument." "The doctrine of equitable estoppel bars the assertion of the truth by one whose misleading conduct has induced another to act to his detriment in reliance on what is untrue." *Stickney v. City of Saco*, 2001 ME 69, ¶ 44, 770 A.2d 592 (quotation marks omitted). It "should be carefully and sparingly applied." *Id.* (quotation marks omitted).

The court's reliance on equitable estoppel in this matter was erroneous for several reasons, including that equitable estoppel was not raised by any of the parties in their pleadings, nor argued in their summary judgment memoranda; the summary judgment record contains no undisputed facts that would support a judgment as a matter of law on the elements of equitable estoppel; and no factual findings of any kind properly could be made at the summary judgment stage, *see Alexander v. Mitchell*, 2007 ME 108, ¶ 10 n.3, 930 A.2d 1016 ("Courts *do not make factual findings* in considering a motion for summary judgment."); *Stickney*, 2001 ME 69, ¶ 44, 770 A.2d 592 (stating that a court's application of equitable estoppel is a factual finding reviewed for clear error). Further, at least one other court has held that estoppel is no basis to obviate the requirement of an insurable interest when the insured had only a life estate in the property. *E.g.*, *Garnett v. Royal Ins. Co.*, 98 S.E. 363, 364-65 (Ga. Ct. App. 1919) (holding that the insurer was not estopped from denying coverage for loss sustained after the insured died because "the controlling fact" was that the insured had only a life estate, and thus the insurable interest had ended upon the insured's death).

12

the property—again, not as Carroll's heirs or through Carroll's Estate, but as the remaindermen.

[¶18] The parties dedicate much of their argument to whether Curtis and Daryl have authority to enforce the policy pursuant to the death clause, but because the real property never passed to Carroll's Estate, the death clause of the policy has no application to the real property. By its plain terms, the death clause sets out who can stand in Carroll's shoes to act on behalf of the *Estate*— as the insured decedent—in the enforcement of the policy as to the *Estate's* property. [5] The death clause does not apply to property that is not part of the Estate, and because Carroll had only a life estate in the dwelling, the dwelling was never part of the Estate.

[¶19] In short, although any covered property in Carroll's Estate remained insured after Carroll's death according to the terms of the death clause, the Estate had no insurable interest in the real property by operation of

---

[5] By the terms of the policy, either (1) Carroll's "legal representative," if one existed, or (2) a person with "proper temporary custody," if a legal representative did not yet exist, could enforce the policy on behalf of the Estate. *See Allstate Ins. Co. v. O'Shaughnessy*, 384 A.2d 486, 487 (N.H. 1978) ("Although an insurance contract is personal in nature and generally terminates upon the death of the named insured, coverage may be continued by statute or by provisions contained in the policy."); *see also In re Smith's Estate*, 36 N.W.2d 815, 826 (Iowa 1949) ("After he is dead, his legal representative is purely and solely a legal representative of the estate and not of the person of the deceased. He is purely a business representative . . . ."). Such standard language reflects that an insurance policy is a personal contract that does not run with the property itself, but instead adheres to the insured or person acting on behalf of the insured. *See Quigley v. Caron*, 247 A.2d 94, 95 (Me. 1968); *Forbes v. Am. Int'l Ins. Co.*, 271 A.2d 684, 685 (Md. 1970).

the established black-letter law of life estates. *See Forbes*, 271 A.2d at 685. It is this distinction that underlies MMG's agreement to pay on the policy for the loss of Carroll's personal property within the dwelling. That personal property was not part of the life estate, it therefore did become part of Carroll's Estate upon Carroll's death, and the Estate was thus able to enforce Carroll's policy as to that personal property. In the absence of such an insurable interest, the Estate—including Curtis and Daryl, whether as heirs or as personal representatives—is barred by section 2406 from enforcing the policy as to the dwelling.[6]

2. Curtis and Daryl

[20] Curtis and Daryl have had a continuous insurable interest in the property since 1994. From 1994 until Carroll's death, their insurable interest was as remaindermen; from Carroll's death forward, their insurable interest was as record owners (whose possessory rights had recently been created by their father's death). At no time, however, was Curtis and Daryl's interest in the property insured by MMG's policy. *See Huard v. Pion*, 149 Me. 67, 71, 98 A.2d

---

[6] Each of the cases on which Curtis and Daryl rely is easily distinguishable; in none of them did the decedent have only a life estate in the entire property at issue, and thus, in each, the decedent's estate retained an insurable interest in some portion of the property after the decedent's death. *E.g.*, *Gray v. Holyoke Mut. Fire Ins. Co.*, 302 So. 2d 104, 106-11 (Ala. 1974); *Grant v. Eliot & Kittery Mut. Fire Ins. Co.*, 75 Me. 196, 199, 202 (1883); *Spurlock v. Beacon Lloyds Ins. Co.*, 494 S.W.3d 148, 150-54 (Tex. App. 2015); *Loomis v. Vernon Mut. Fire Ins. Co.*, 111 N.W.2d 443, 444-45 (Wisc. 1961).

261 (1953) (stating that there is "no privity between a life tenant and his remainderman").

[¶21] When the fire occurred on February 25, 2014, several weeks after Carroll's death, none of the parties was both insured by MMG *and* in possession of an insurable interest. We conclude that section 2406 precludes enforcement of the policy as to the dwelling as a matter of law, and we therefore vacate the entry of a summary judgment in favor of the Estate and remand for entry of a summary judgment in favor of MMG.

The entry is:

> Judgment vacated. Remanded for entry of a judgment in favor of MMG Insurance Co. on all counts.

---

Peter T. Marchesi, Esq. (orally), and Cassandra S. Shaffer, Esq., Wheeler & Arey, P.A., Waterville, for appellant MMG Insurance Company

William L. Vickerson, Esq. (orally), and Robert M. Morris, Esq., Irwin Tardy & Morris, Portland, for appellees Estate of Carroll G. Frye et al.